Coös,
May 2, 1911.

### HILLIARD v. BALDWIN & a.

The statute providing that persons cohabiting and acknowledging each other as husband and wife, and generally reputed to be such, for the period of three years and until the decease of one of them, shall thereafter be deemed to have been legally married, cannot be so construed as to validate a polygamous marriage or to legitimize the offspring of such a union.

TRESPASS *quare clausum fregit.* Plea, the general issue with a brief statement alleging soil and freehold. Transferred from the December term, 1910, of the superior court by *Pike,* J.

Only two questions were in dispute respecting the title to the land. The jury were excused from returning a general verdict, but were required to answer the questions, which they did. Their answers and other facts are stated in the opinion.

*Sullivan & Daley* and *Drew, Shurtleff & Morris,* for the plaintiff.

*Jason H. Dudley, Herbert I. Goss,* and *Jesse F. Libby,* for the defendants.

BINGHAM, J. This is an action of trespass *quare clausum fregit.* The defendants pleaded the general issue, with a brief statement alleging soil and freehold. Both parties claimed to own the same tract of land. Upon the issue of title the burden of proof was upon the plaintiff. *Tabor* v. *Judd,* 62 N. H. 288. George Merrill is the source from which each party derives title. He died, intestate, June 28, 1892, leaving surviving him Alice (his alleged widow), two children, and Daniel Merrill, his father. Subsequently to his death, the plaintiff purchased the property from Alice and the children, and the defendants purchased it from Daniel. If upon the death of George the title descended to Alice and the children, or to the children alone, the plaintiff is the legal owner of the land. If it descended to Daniel, then the defendants are the owners.

January 11, 1872, Alice married Warren Heath, who is now alive. December 21, 1879, without having procured a divorce, she married George Merrill and lived with him as his wife down to the time of his death, a period of about twelve years. The two children were the result of this union.

"All marriages prohibited by law on account of the consanguinity or affinity of the parties, or where either has a former wife or husband living, knowing such wife or husband to be alive, if solemnized in this state, . . . [are] absolutely void without any decree of divorce or other legal process." P. S., *c.* 175, *s.* 1. The plaintiff concedes that the marriage into which George and Alice entered in 1879 was illegal and void. This concession involves an admission that Warren was alive at the time the marriage was solemnized, that the contracting parties knew that he was alive, and that Alice was not divorced from him. If it were true that the contracting parties did not then know that Warren was alive and honestly believed him to be dead, and that that fact, if proved, might present the question whether the marriage was voidable and not void, it is unnecessary in this case to consider it, as the plaintiff, upon whom the burden of the issue rested, has failed to establish the fact. It would seem, however, from the decision in *Emerson* v. *Shaw*, 56 N. H. 418, 420, as hereinafter pointed out, that the marriage would nevertheless be regarded as void.

The plaintiff rests his case upon section 15, chapter 174, of the Public Statutes, which reads as follows: "Persons cohabiting and acknowledging each other as husband and wife, and generally reputed to be such, for the period of three years, and until the decease of one of them, shall thereafter be deemed to have been legally married." His contention is (it being found that George and Alice cohabited and acknowledged each other to be husband and wife, and were generally reputed to be such for the period of three years and until George died) that they must be deemed legally married; that the statute was enacted to quiet inheritances, and entitled Alice to inherit from George as his widow and the children to inherit from him as though they were legitimate. The defendants' contention is that the statute—conceding it to be a statute of repose to quiet inheritances—was only intended to apply to cases where there was no legal obstacle disqualifying the parties from entering into a valid marriage.

In interpreting the statute it is necessary to take into consideration the state of the law, both statutory and common, upon the subject of marriage and inheritance, as it existed at the time the statute was passed, and such subsequent enactments as may lend aid in ascertaining its meaning. It was first enacted in 1842. R. S., *c.* 149, *s.* 11. At the same time laws were passed providing that "all marriages prohibited by law on account of the consan-

guinity or affinity of the parties . . . shall, if solemnized in this state, be absolutely void without any decree of divorce or other legal process" (R. S. *c.* 148, *s.* 1); that such marriages shall be "incestuous," and the issue "illegitimate." R. S., *c.* 147, *s.* 3; P. S., *c.* 174, *s.* 3. At common law, marriages within the prohibited degrees of consanguinity and affinity were voidable only, and until set aside were practically valid. *Hayes* v. *Rollins,* 68 N. H. 191; 1 Bish. Mar. Div. & Sep., ss. 259, 271. The children of such a marriage, in the absence of a decree of nullity, were treated as legitimate; and the wife, if she survived her husband, was entitled to dower. *Ib., s.* 272. Its validity could be inquired into only in a proceeding to obtain a decree of nullity, and that had to be procured during the lives of both the contracting parties to preclude the wife and children from inheriting. *Ib., ss.* 259, 277. But since the enactment of the above statutes, marriages of persons within the prohibited degrees are held to be absolutely void; the husband or wife takes nothing in the other's estate, and the children are illegitimate. *Hayes* v. *Rollins,* 68 N. H. 191; *Bickford* v. *Bickford,* 74 N. H. 448, 453; P. S., *c.* 174, *s.* 3. As it appears that the legislature, in 1842, reversed the rule of the common law as to incestuous marriages by making them void, not voidable, and by making the children illegitimate, it is highly improbable that the same legislature, in the enactment of the statute upon which the plaintiff relies, intended to legalize the incestuous relation provided the parties continued in it for three years and until one of them died, or to make the children legitimate.

Again, at common law, a marriage was held to be absolutely void if at the time it was entered into either party had a former wife or husband living. *Heffner* v. *Heffner,* 23 Pa. St. 104; *Smith,* J., in *Emerson* v. *Shaw,* 56 N. H. 418, 420; 1 Bish. Mar. Div. & Sep., *ss.* 717, 719, 721. Neither party could inherit from the other (1 Bish. Mar. Div. & Sep., *s.* 724), and their children, being illegitimate, could not inherit from father or mother. *Morgan* v. *Perry,* 51 N. H. 559; *Bickford* v. *Bickford,* 74 N. H. 448; *Fenton* v. *Reed,* 4 Johns. 52; 1 Salk. 121; 1 Bl. Com. 436; 2 Kent 79; 1 Bish. Mar. Div. & Sep., *s.* 725. As to such marriages, section 1, chapter 175, of the Public Statutes (R. S., *c.* 148, *s.* 1), is a reënactment of the common law, to the extent, at least, that it declares them to be absolutely void. *Bickford* v. *Bickford,* 74 N. H. 448, 453. And even since the enactment of this statute, such a marriage has been held to be absolutely void in a case where it was not made to appear

that the parties, at the time their marriage was solemnized, knew the husband or wife by the prior marriage was alive. *Emerson* v. *Shaw* (1876), 56 N. H. 418, 420.

This was the state of the law on the subject down to 1845, when the legislature, thinking no doubt that it visited too great a punishment upon innocent children born out of lawful wedlock, enacted a statute providing that "bastards and their issue shall be heirs of the mother," and that "her real estate shall descend and her personal estate shall be distributed . . . in equal shares to her legitimate and illegitimate children and their issue." Laws 1845, c. 238, ss. 1, 2; P. S., c. 196, ss. 4, 5. And in 1860, in further recognition of this situation, it was enacted that "where the parents of children born before marriage afterward intermarry, and recognize such children as their own, such children shall inherit equally with other children under the statute of distribution, and shall be deemed legitimate." Laws 1860, c. 2343, s. 1; P. S., c. 174, s. 18; *Morgan* v. *Perry*, 51 N. H. 559. This statute gives a child born out of wedlock, whose parents afterward marry and recognize him as their own, full rights of inheritance and makes him legitimate. It does not in terms state that the father and mother shall be legally capable of entering into the marriage relation in order to confer the benefits of the act upon their children, but such an intent is clearly implied; and if they are not legally capable of marrying, that the *status* of the child shall be governed by the provisions of the act of 1845, under which he is illegitimate and is only allowed to inherit from his mother (*Goodwin* v. *Colby*, 64 N. H. 401; P. S., c. 196, s. 4), except in cases arising since the amendment of 1905, which permits him to inherit from her kindred. Laws 1905, c. 4.

It is apparent from what has been said that the statute under which the plaintiff claims cannot be given the construction for which he contends; that the result of such a holding would be either that Alice, by living in adultery with George, effected a divorce from Warren, or if this is not so, that she must be regarded as the legal wife of both and entitled to inherit from both. That parties cannot divorce themselves by their own acts, or be divorced by a legislative fiat or anything short of a judicial decree, are propositions too well recognized to require discussion. And that it was intended in the enactment of the law that a person standing in the relation which Alice did to George and Warren should be regarded as the legal wife of both and entitled to inherit from both, is altogether too improbable to merit serious consideration.

Neither can it be presumed that the act contemplates that children born of parents whose marriage is absolutely void because it was either incestuous or polygamous should be regarded as legitimate, especially when in one case a statute expressly declares them to be illegitimate and in the other they are so regarded at common law. If the legislature intended to accomplish such a result, it is reasonable to suppose it would have used unequivocal language declaring such an intent.

In compliance with the order made in the superior court, there must be,

*Judgment for the defendants.*

All concurred.