Rockingham
No. 86-161

GORDON F. MCALPIN

v.

KAREN L. MCALPIN

October 9, 1987

*David K. Fulton P.A.*, of Eliot, Maine (*David K. Fulton* on the brief and orally), for the plaintiff.

*Glen E. Graper P.A.*, of Portsmouth (*Glen E. Graper* on the brief and orally), for the defendant.

JOHNSON, J.   The plaintiff, Gordon F. McAlpin, appeals from the issuance of a divorce decree by the Superior Court (*Manias*, J.) pursuant to RSA 458:7-a. He seeks to set aside that portion of the decree concerning the division of property between himself and the defendant, Karen L. McAlpin, specifically challenging as inequitable the disposition of the parties' business and of proceeds from the sale of their vacation camp. He also suggests that the trial court

may have based its award, in part, on a misunderstanding as to the amount of money contained in the parties' joint brokerage account with A. G. Edwards. We affirm the trial court's disposition of the business and camp proceeds, but remand for further findings of fact regarding the value of the A. G. Edwards account.

Gordon and Karen McAlpin were married on September 25, 1976. Until their separation in August 1984, they lived together in Fremont in a house owned by the plaintiff's father. For several months prior to the divorce hearing, the parties lived separate and apart, with the plaintiff living in the Fremont house. At the time of their divorce in December 1985, each was thirty-two years old and had earned a college degree. They had two daughters, aged seven and five and a half. The court awarded custody of the children to the defendant.

The trial court divided the parties' property as follows. Each retained personal property, and they were to divide household furnishings and appliances by agreement. The plaintiff received the Fremont residence and took responsibility for a Mastercard bill and all obligations either to his parents or arising from the use of the Fremont residence. The parties owned three automobiles. The court awarded to each the car driven during the separation. It ordered that the third car, a collector's item, be sold and the proceeds divided equally.

The court awarded the defendant all interest in property located in Rochester, which she had purchased with an initial $10,000 distribution to her from sale, during the separation, of the parties' vacation camp. It also awarded her all of the proceeds from the camp sale then held in escrow, together with the $10,000 the plaintiff had received as his share of the early distribution. In dividing the parties' jointly owned business, the trial court awarded the defendant $14,460, which the parties agreed was the amount of her investment. In return, it ordered that the defendant transfer all her interest in the business to the plaintiff. The court also awarded to the plaintiff all right, title and interest in the parties' joint brokerage account with A. G. Edwards, in which they had deposited stocks including gifts from the plaintiff's father. Finally, it ordered that the parties divide all other joint accounts equally. We discuss in greater detail below the aspects of the property division that the plaintiff specifically challenges.

The broad question that the plaintiff presents for our review is whether the trial court abused its discretion by dividing the parties' property in a way so inequitable as to amount to an error of law. He specifically challenges the distribution of the camp proceeds

solely to the defendant and the trial court's decision to divide the business as it did without evidence of the current value of the venture's total assets and liabilities. He argues, as a subsidiary issue, that the trial court abused its discretion in refusing to admit this evidence on plaintiff's December 6, 1985 motion to reopen. Finally, he brings to our attention the possibility that the court may have misunderstood evidence as to the value of a joint brokerage account held in the parties' names.

■ In matters of property settlement and divorce, we allocate broad discretion to the trial court, *Economides v. Economides*, 116 N.H. 191, 193, 357 A.2d 871, 872 (1976), and will set aside its determinations of property division only where the appealing party can demonstrate a clear abuse of discretion. *Grandmaison v. Grandmaison*, 119 N.H. 268, 270, 401 A.2d 1057, 1058–59 (1979).

■■ In order properly to exercise this discretion, the trial court need not, in all cases, make an equal distribution. Rather, it must make what it deems an equitable distribution after considering the parties' property in its entirety and special circumstances recognized by this court as bearing on just division. *Hodgins v. Hodgins*, 126 N.H. 711, 714, 497 A.2d 1187, 1189 (1985); *MacDonald v. MacDonald*, 122 N.H. 339, 342, 443 A.2d 1017, 1018 (1982); *Grandmaison, supra* at 271, 401 A.2d at 1059; *Azzi v. Azzi*, 118 N.H. 653, 656, 392 A.2d 148, 150 (1978). We have recently held, however, that, despite its broad discretion and its power to order an unequal distribution in the interest of equity, the trial court must nevertheless satisfy certain requirements in rendering its decision. Thus "in the absence of any such special circumstances the distribution should be as equal as the court can make it, [and] [i]f, in a particular case, the court concludes that an unequal distribution of property is warranted, it should state its reasons and make specific findings and rulings supporting its decision." *Hodgins, supra* at 715, 497 A.2d at 1190 (citation omitted).

■ Special circumstances that may justify an unequal distribution include, among others: (1) a marriage of short duration; (2) the exclusive premarital possession of an asset by one party that continues after marriage; (3) the recent acquisition of an asset by one party through family relationship; (4) one party's need to provide a home for minor children; (5) the assurance of each party's future security; and (6) the fault of either party. *Hodgins, supra* at 714–15, 497 A.2d at 1189–90.

■ As noted, the plaintiff challenges the trial court's distribution of the camp proceeds, the business, and the brokerage account. We address that court's disposition of each benefit separately below. The plaintiff also charges that the trial court acted inequitably in awarding him an automobile worth $3,000 while it awarded the defendant an automobile worth $10,000–$11,000. Evidence as to the value of these vehicles was conflicting, and the trial court refused plaintiff's request that it find the values stated above. Given the conflicting testimony and each party's obvious need for an automobile, the court did not abuse its discretion in making this award.

## I. *Camp Sale Proceeds*

From September 1981 until its sale following their separation, the parties owned a camp at Merrymeeting Lake in New Durham. The trial court awarded all proceeds from the sale of this camp to the defendant. Thus, the proceeds themselves were apportioned unequally. The trial judge specifically found, however, that $46,822 of the $50,000 down payment on the camp were funds the defendant inherited from her mother. There was also testimony from which the judge could have found that the parties made all further payments on the camp from joint accounts.

■ Where the vast majority of the camp payments were thus attributable to the defendant's inheritance, the judge did not abuse his discretion in awarding her the property's sale value. *See Henderson v. Henderson*, 121 N.H. 807, 810, 435 A.2d 133, 135 (1981). This is particularly true where the judge awarded to the plaintiff a joint stock account containing funds largely attributable to gifts from his family. In short, the trial judge made findings of fact that justify unequal distribution of the camp proceeds and consistently recognized that each party deserved the benefit of a family inheritance or gift.

## II. *Family Business*

During the last two years of their marriage, the parties also owned and operated a retail business in Exeter. Until their separation, they shared equally the tasks of running this business and caring for their children at home by alternating these duties weekly, one providing child care, while the other ran the business.

At trial, the plaintiff requested that the business be valued in terms of assets minus liabilities and sold, with the profits divided equally between the parties. Each would also have the option of

buying the other's share. The defendant requested that she be awarded her $14,460 investment and that, in return, the plaintiff be given full title and interest in the business. The judge granted the defendant's request. The plaintiff charges that the judge lacked sufficient grounds to support this distribution because he had not received evidence regarding the total assets and liabilities of the business.

Although neither party introduced evidence at trial to show the full value of business assets and liabilities, the plaintiff did testify that the value of his inventory was $21,000, that the only loan outstanding was a $6,000 debt to his parents, which he agreed to assume, and that there were trade debts of an unknown amount. The defendant testified that, since their separation, the plaintiff had refused to allow her to work in the business. It was uncontroverted that, during this period, the plaintiff drew a weekly paycheck, while the defendant received neither a paycheck nor any other profit from the business. Both parties further agreed that the defendant invested a total of $14,460 in the business. She provided $10,000 of this as start-up funds through a loan from her father. When she came of age to inherit $14,460 from her uncle the following year, she repaid the loan to her father and invested the remaining $4,460 in the business as well.

■ We hold that the distribution of the business was as equal a distribution as the court could effect under the circumstances. Consequently, the court's order did not require detailed findings, rulings, or explanation under *Hodgins* and was not an abuse of discretion. *Hodgins*, 126 N.H. at 715, 497 A.2d at 1190.

There was ample evidence at trial that the plaintiff alone had managed and profited from the business for at least six months prior to the divorce decree. From this the trial judge could reasonably have concluded that a sale of the business with equal division of the profits would not, in fact, be the most equal division under the circumstances. Added to the peculiar facts of this case is the court's concern to avoid actions that may reduce the value of a going business. *See Grandmaison*, 119 N.H. at 271, 401 A.2d at 1059. The trial court had before it evidence regarding the inventory of the business and outstanding loans. All testimony indicated that the business was a profitable concern. Furthermore, there are many indications that this divorce was a particularly bitter one, making it desirable to dispose of property in a way requiring as little further interaction between the parties as possible. 27C C.J.S. *Divorce* § 565 (1986); *Hellwig v. Hellwig*, 100 Ill. App. 3d 452, 459–60, 426 N.E.2d 1087, 1092 (1981).

These considerations, in combination with the facts of the case, suggest that the trial judge acted reasonably in dividing the business in a way that would, in the long run, prove to have been as equal as possible. He awarded the defendant her initial investment, inherited from her uncle, and awarded the plaintiff a going concern that, presumably, would continue to provide him a profit or which he could sell if he so desired.

The trial judge had before him sufficient evidence upon which to decide whether a sale of the business and division of the proceeds or some other disposition would actually be more nearly equal. In reaching his decision, he had to weigh, as a trial judge often must, conflicting and confusing evidence in an attempt to reach a just conclusion. In so doing, he properly exercised the broad discretion we accord him for that purpose.

■ The judge's refusal to grant the plaintiff's motion to reopen for admission of the family business accountant's report was also proper. The plaintiff had ample opportunity to obtain from his accountant, before the close of trial, the records necessary to show the present value of the business. Furthermore, the plaintiff presented no reason at the hearing on his motion to reopen that would justify untimely presentation of this evidence. He demonstrated neither that this evidence was previously unavailable nor that he had been prevented from presenting it by fraud or deception. *Rollins v. Rollins*, 122 N.H. 6, 9, 440 A.2d 438, 440 (1982); *Theriault v. Theriault*, 104 N.H. 326, 327, 184 A.2d 459, 460 (1962).

III. *Brokerage Account*

■ Although we hold that the trial judge did not abuse his discretion in dividing the camp proceeds and business as he did, we nevertheless remand this case for further findings regarding the value of the A. G. Edwards joint brokerage account, in which the parties deposited, among other assets, gifts of stock from the plaintiff's father. The court, on remand, may make any change of the initial award that may prove consistent with its findings relative to the brokerage account. *See Howard v. Howard*, 129 N.H. 657, 531 A.2d 331 (1987). The plaintiff has presented, for the first time on appeal, an indication that the stenographer may mistakenly have recorded his testimony regarding the value of the brokerage account awarded to him as $58,040.05 rather than $5,840.05. Because there exists a genuine issue of fact as to the plaintiff's testimony at trial and the actual value of the account, and because we do not know on what value the judge based his total distribution,

we remand for findings on that issue and for any redivision of the property that fairness may consequently require.

*Affirmed in part; remanded in part.*

All concurred.