Derry Family Division
No. 2011-075

IN THE MATTER OF ERIC J. DUBE AND JEANNIE DUBE

Argued: February 15, 2012
Opinion Issued: May 11, 2012

576

*Wiggin & Nourie, P.A.,* of Manchester (*Doreen F. Connor* on the brief and orally), for the petitioner.

*Puckhaber Law Offices, PLLC,* of Concord (*Diane M. Puckhaber* on the brief and orally), for the respondent.

CONBOY, J. The respondent, Jeannie Dube, appeals the final decree in the divorce action initiated by the petitioner, Eric Dube. She argues that the Derry Family Division (*Moore*, J.) erred when it granted Eric a fault-based divorce. In addition, she challenges the trial court's division of the parties' property and its denial of her alimony request. Further, she contests the validity of the stipulated parenting plan. We affirm in part and reverse in part.

The trial court found the following facts. The parties were married in 1997. During their marriage, they purchased a home in Candia, where they lived with their son and one of Eric's children from a previous marriage. In addition, Eric's parents lived in an in-law apartment over the garage of the marital home.

In the later years of their marriage, the parties began to experience marital difficulties. They demonstrated little to no affection toward one another, and Jeannie refused to be intimate with Eric. On November 30, 2008, Jeannie learned that Eric had engaged in a single instance of adultery.

Three days later, on December 3, 2008, while the pair discussed their marriage during a telephone conversation, Jeannie told Eric that she was going to kill the parties' minor child, Eric's child from a previous relationship, and Eric's parents. She also told him that she was going to burn down the marital residence. Following their conversation, Jeannie "doused the marital residence and garage with gasoline and attempted to ignite it with a lighter." In addition, she "destroyed a portion of the marital residence and property with an ax[]," and then chased Eric's father around the house with

the ax, as he tried to prevent her from lighting the gasoline. Consequently, the next day, Eric obtained a restraining order against Jeannie. As a result of her actions, Jeannie was charged with two counts of attempted murder, one count of attempted arson, and one count of criminal mischief.

On December 9, 2008, Eric filed for divorce, claiming irreconcilable differences caused the breakdown of the parties' marriage. *See* RSA 458:7-a (Supp. 2011). Thereafter, he amended his divorce petition and added an alternate ground for divorce, claiming Jeannie "ha[d] so treated [him] as seriously to injure health or endanger reason." RSA 458:7, V (2004). After he amended his petition, but prior to the final hearing, Jeannie was convicted of one count of attempted arson and one count of criminal mischief and was subsequently sentenced to two to four years at the New Hampshire State Prison for Women. As a result, during the final divorce hearing, Eric asked the court to consider that Jeannie's "conviction of a crime punishable by prison for more than one year constitute[d] fault grounds that caused the breakdown of the marriage." *See* RSA 458:7, IV (2004).

Following the final hearing, the trial court granted Eric a decree of divorce "on the grounds of [Jeannie's] conviction of a crime and imprisonment for more than one year." In addition, after consideration of the parties' debt and marital assets, as well as Jeannie's incarceration, the court concluded that an unequal division of the marital property in Eric's favor was warranted. Further, the court adopted the parties' stipulated parenting plan, which awarded Eric decision-making and residential responsibility for their minor son, and detailed a plan to facilitate progressively increased contact between Jeannie and the boy. Finally, the court denied Jeannie's request for alimony, finding it "unwarranted." This appeal followed.

## I. Fault-Based Divorce

We first address Jeannie's contention that the trial court erred in granting Eric a fault-based divorce on the grounds of her conviction and subsequent imprisonment. She asserts that Eric is not an "innocent party" because he committed adultery, and, therefore, he is precluded from obtaining a fault-based divorce.

RSA 458:7 (2004) provides in pertinent part:

A divorce from the bonds of matrimony shall be decreed in favor of *the innocent party* for any of the following causes: . . .

II. Adultery of either party.

. . . .

IV. Conviction of either party, in any state or federal district, of a crime punishable with imprisonment for more than one year and actual imprisonment under such conviction.

V. When either party has so treated the other as seriously to injure health or endanger reason.

RSA 458:7, II, IV-V (emphasis added). Although the trial court did not make a specific finding that Eric was an "innocent party," because it granted a divorce on fault grounds, we assume it made such a finding. *See Dombrowski v. Dombrowski*, 131 N.H. 654, 663 (1989). We will affirm the trial court's factual findings unless the evidence does not support them or they are legally erroneous. *In the Matter of Hampers & Hampers*, 154 N.H. 275, 279 (2006).

In *Rockwood v. Rockwood*, 105 N.H. 129, 129 (1963), we considered whether the husband, who was found guilty of adultery, was "the innocent party" and therefore entitled to a divorce. We determined that "innocent" meant "free from guilt." *Id.* at 131 (quotations omitted). We then explained that a spouse cannot be "the innocent party" if he "is guilty of an offense against the other spouse, which would be grounds for divorce." *Id.*; *see Schwarz v. Schwarz*, 427 S.W.2d 734, 739 (Mo. Ct. App. 1968) ("[T]he conduct of one party will not prevent him from being adjudged an innocent party unless it be such as to entitle the other party, prima facie, to a divorce." (quotation omitted)).

Here, the record does not support the trial court's implicit finding that Eric was "the innocent party." Eric does not dispute his infidelity; yet, he contends that he is still an "innocent party" because Jeannie's conduct, and not his adultery, was the primary cause of the marital breakdown. Eric argues that the parties' agreement to "work through" the affair constituted Jeannie's condonation of his adultery, thus restoring his status as an "innocent party." The affirmative defense of condonation "is the forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated." *Tibbetts v. Tibbetts*, 109 N.H. 239, 241 (1968) (quotations omitted). Under the doctrine, "[i]f either party to a marriage thinks proper to forgive the infidelity of the other, it cannot afterwards be set up as a ground of divorce, without evidence of a [further] injury." *Quincy v. Quincy*, 10 N.H. 272, 273 (1839).

The record, however, does not support Eric's assertion that Jeannie condoned his infidelity. While she may have agreed to work on their marriage, her conduct in the days immediately following his disclosure does not support a finding that Jeannie forgave Eric's adultery. Two days after

his disclosure, Eric received numerous voicemail messages from Jeannie who was "irate" and at times "just screaming and yelling." On the third day after his disclosure, she threatened and attempted to kill his family and destroy the marital home. Moreover, during the divorce hearing, Jeannie stated, "I don't think forgiveness was the question at the time. It was what did I — what do I need to do to — if — what did I miss, what did I need to do was what we were — what we were trying to find out." Thus, the doctrine of condonation is inapplicable here, and therefore, Eric cannot claim the status of an "innocent party."

Because we conclude that Eric is not entitled to a fault-based divorce, we need not address Jeannie's alternative argument that the cause of the marital breakdown could not have been her conviction since she had not yet been convicted when the divorce petition was filed or amended prior to the final hearing. Nevertheless, we affirm the trial court's decision dissolving the parties' marriage. The record supports a dissolution based upon irreconcilable differences. *See* RSA 458:7-a. Accordingly, we reverse the trial court's decision to the extent that it granted Eric a fault-based divorce; otherwise, we affirm the trial court's decision to grant a divorce.

## II. Alimony

■ Next, Jeannie contends that the trial court erred in denying her alimony. Pursuant to RSA 458:19 (Supp. 2011), a trial court may award alimony if:

> (a) The party in need lacks sufficient income, property, or both, including property apportioned in accordance with RSA 458:16-a, to provide for such party's reasonable needs, taking into account the style of living to which the parties have become accustomed during the marriage; and

> (b) The party from whom alimony is sought is able to meet reasonable needs while meeting those of the party seeking alimony, taking into account the style of living to which the parties have become accustomed during the marriage; and

> (c) The party in need is unable to be self-supporting through appropriate employment at a standard of living that meets reasonable needs . . . .

RSA 458:19, (I)(a)-(c). Trial courts have broad discretion in awarding alimony. *In the Matter of Peirano & Larsen*, 155 N.H. 738, 746 (2007). We review the trial court's decision under our unsustainable exercise of discretion standard. *Id.*

After consideration of the factors enumerated in RSA 458:19, the trial court denied Jeannie's alimony request, finding "that the [p]etitioner [did] not have the ability to pay and that the [r]espondent [did] not have a definitive need for alimony due to her incarceration." In addition, the court noted that "the [p]etitioner has had to pay a majority of the marital debt since the [r]espondent's criminal conduct . . . and will continue to pay during her period of incarceration." Nevertheless, Jeannie contends that the evidence supports her need for alimony, as well as Eric's ability to pay it.

■ In determining whether to award alimony, the trial court considered Eric's yearly salary of $93,000 and his monthly veteran's benefits of $243, as well as the estimated $337,400 value of the marital property awarded to him, including the home mortgage loan of $272,898.47 and home equity loan of $27,809.74. In addition, the court considered the $56,511.61 of marital debt allocated to Eric and his obligations as primary support for the parties' son and his two other children. Despite his relatively high salary and his award of the marital residence, the record supports the trial court's finding that Eric's obligations to support the children, to pay down the encumbrances on the marital residence, to pay his individual debt, and to pay the marital debt while Jeannie is incarcerated, make an alimony award "unwarranted" and "inappropriate."

■ The record also supports the trial court's finding that Jeannie did not need alimony. "The primary purpose of alimony is rehabilitative," *In the Matter of Fowler and Fowler*, 145 N.H. 516, 520 (2000), and it "is designed to encourage the recipient to establish an independent source of income." *Id.* (quotations omitted). " 'Rehabilitative' alimony is based on the theory that modern spouses are equally able to function in the job market and to provide for their own financial needs." *Id.* Consequently, "[t]he purpose of an order for support is not to provide a life-time profit-sharing plan." *Calderwood v. Calderwood*, 114 N.H. 651, 653 (1974) (quotations and ellipsis omitted). Given Jeannie's incarceration, an alimony award would not have fulfilled its purpose of "encourag[ing] the recipient to establish an independent source of income." *In the Matter of Fowler*, 145 N.H. at 520 (quotations omitted). Moreover, during her incarceration, her basic needs will be met; thus, she does not "lack[] sufficient income, property, or both . . . to provide for [her] reasonable needs." RSA 458:19, I(a).

As there is sufficient evidence to support the trial court's factual findings, we uphold them. *In the Matter of Henry*, 163 N.H. at 183. We conclude, therefore, that the trial court sustainably exercised its discretion in declining to make an alimony award.

*III. Property Distribution*

█ Jeannie next asserts that the trial court's distribution of the marital property constitutes an unsustainable exercise of discretion. RSA 458:16-a, II (2004) creates a presumption that equal distribution of marital property is equitable. *In the Matter of Henry,* 163 N.H. at 183. Absent special circumstances, the court must make the distribution as equal as possible. *Id.; see* RSA 458:16-a, II. In making its determination, the court is required by statute to consider various factors, including "the length of the marriage, the ability of the parties to provide for their own needs, the needs of the custodial parent, the contribution of each party during the marriage and the value of property contributed by each party." *In the Matter of Crowe & Crowe,* 148 N.H. 218, 221 (2002); *see* RSA 458:16-a, II. The trial court may also consider "[a]ny other factor that the court deems relevant." RSA 458:16-a, II(*o*). A trial court is not precluded, however, from awarding a particular asset in its entirety to one party. *In the Matter of Salesky & Salesky,* 157 N.H. 698, 708 (2008). As we afford trial courts broad discretion in determining property distribution, we will not overturn the trial court's decision absent an unsustainable exercise of discretion. *Id.* If the court's findings can reasonably be made on the evidence presented, they will stand. *Id.*

█ Jeannie first asserts that the trial court failed to state its reasons and make specific findings and rulings to support its unequal division of the marital property. RSA 458:16-a, IV requires the trial court to "specify written reasons for the division of property which it orders." Further, if the "court concludes that an unequal distribution of property is warranted, it should state its reasons and make specific findings and rulings supporting its decision." *In the Matter of Peirano,* 155 N.H. at 749 (quotation omitted). A court can satisfy these requirements by citing facts from the record that reflect the factors listed in RSA 458:16-a. *See In the Matter of Costa & Costa,* 156 N.H. 323, 327 (2007).

█ Here, to support its decision, the trial court referenced several factors enumerated in RSA 458:16-a. For example, the court found that since Eric has a continuing obligation to pay a majority of the joint marital debt, awarding him seventy percent of the thrift savings plan was warranted; further, the court specifically directed Eric to "utilize [the] funds to pay the parties' marital debt during Jeannie's period of incarceration." *See* RSA 458:16-a, II(b) (listing as a factor the "liabilities of each party"). Moreover, the court noted that "the [p]etitioner has remained in the marital residence with his children from a previous marriage, as well as the parties' minor son." *See* RSA 458:16-a, II(e) (listing as a factor "[t]he need of the custodial

parent . . . to occupy or own the marital residence"). The trial court also noted that Eric "paid down the mortgage by $4,750 and the personal loan by $8,727 during the pendency of the divorce." *See* RSA 458:16-a, II(*o*) (permitting the court to consider "[a]ny other factor that the court deems relevant"). Finally, the court noted that Jeannie "destroyed a portion of the marital residence" and that Eric would be "solely responsible for payment of all costs associated with the marital residence including but not limited to . . . repairs and maintenance of the home." *See* RSA 458:16-a, II(f) (permitting the court to consider "actions . . . during the marriage which contributed to the . . . diminution in value" of the marital property). Given the record and the court's narrative order, we conclude that the trial court made sufficient written findings to support its unequal apportionment of the parties' marital assets in Eric's favor. *See In the Matter of Costa*, 156 N.H. at 328.

Next, Jeannie contends that there were no special circumstances justifying an unequal distribution of the marital property. *See McAlpin v. McAlpin*, 129 N.H. 737, 740 (1987). While she acknowledges Eric's responsibility to provide a home for their child, she maintains that this "special circumstance was remedied when the trial court awarded him the marital home." Thus, she contends, "[t]here were no other special circumstances which fit the facts associated with this case, except fault, which was granted in error by the trial court."

While we agree with Jeannie's assertion that the trial court erred in granting a fault-based divorce, we nevertheless sustain its unequal distribution of the marital property because the decision is supported by other considerations. As described above, the court's written findings illustrate several "special circumstances" that factored into its decision. Regardless, Jeannie essentially contends that even if the trial court considered some of the relevant statutory factors, and even if there is evidence to support its findings, the court nevertheless failed to weigh the factors properly. In matters of property settlement and divorce, however, we allocate broad discretion to the trial court, *McAlpin*, 129 N.H. at 740, and the record supports the court's unequal division.

Jeannie further argues that the trial court erred "in its determination that the equity in the marital home would be *de minimus* at best." In addition, she contends the court improperly considered Eric's parents' contribution toward the construction of the marital home's in-law apartment. While the court noted Eric's parents' contribution, it focused on the relative debts of each party, and ultimately concluded that Eric's debt

responsibility significantly outweighed Jeannie's. Because the record supports the trial court's factual finding regarding the equity in the marital home, we uphold it.

*IV. Parenting Plan*

Finally, Jeannie challenges the stipulated parenting plan, arguing that it effectively terminated her parental rights. She contends that she lacked the capacity to agree to the plan because she was "distraught" during the divorce proceedings and "suffer[ed] from mental and emotional duress." We decline to address her challenge to the parenting plan, however, because she did not raise the argument before the trial court, and, therefore, has not preserved it for our review. *See LaMontagne Builders v. Brooks*, 154 N.H. 252, 258 (2006).

*Affirmed in part; reversed in part.*

DALIANIS, C.J., and LYNN, J., concurred.