# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0238, <u>In the Matter of Raymond Hayes and Nisha Hayes</u>, the court on February 3, 2020, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The respondent, Nisha Hayes (wife), appeals a final decree entered by the Circuit Court (<u>Ryan</u>, J.) in her divorce from the petitioner, Raymond Hayes (husband). She argues that the trial court erred by: (1) ordering an unequal division of marital property, and requiring that she refinance a loan associated with a car that it awarded to her; and (2) denying her request for alimony.

The trial court has broad discretion in fashioning a final divorce decree. <u>In the Matter Spenard & Spenard</u>, 167 N.H. 1, 3 (2014). Its discretion encompasses decisions concerning alimony and the division of marital property and debt. <u>Id.</u>; <u>In the Matter of Muller & Muller</u>, 164 N.H. 512, 518 (2013). Its discretion likewise includes assigning weight to evidence and evaluating the credibility of witnesses. <u>In the Matter of Summers & Summers</u>, 172 N.H. 474, 479 (2019).

We will not overturn the trial court's rulings absent an unsustainable exercise of discretion. <u>Spenard</u>, 167 N.H. at 3. Accordingly, our review is limited to whether there is an objective basis sufficient to sustain the trial court's discretionary judgments. <u>Id.</u> Conflicts in testimony, questions about the credibility of witnesses, and the weight assigned to testimony are matters for the trial court to resolve. <u>Summers</u>, 172 N.H. at 479. The trial court's factual findings are binding upon us if they are supported by the evidence and are not legally erroneous. <u>Id.</u> If the trial court's findings could reasonably have been made on the evidence before it, they will stand. <u>Spenard</u>, 167 N.H. at 3.

We first address the wife's arguments concerning the division of marital property and debt. RSA 458:16-a (2018) (amended 2019) governs the equitable division of marital property. Pursuant to RSA 458:16-a, II, the equal division of marital property is presumed equitable, and absent special circumstances, the trial court is required to make the distribution as equal as possible. <u>In the Matter of Dube & Dube</u>, 163 N.H. 575, 582 (2012). The trial court may, however, determine that an equal division of property would not be appropriate or equitable after considering one or more of several factors, including:

(a) The duration of the marriage.

(b) The age, health, social or economic status, occupation, vocational skills, employability, separate property, amount and sources of income, needs and liabilities of each party.

(c) The opportunity of each party for future acquisition of capital assets and income.

. . . .

(f) The actions of either party during the marriage which contributed to the growth or diminution in value of property owned by either or both of the parties.

. . . .

(n) The value of any property acquired by gift, devise, or descent.

(o) Any other factor that the court deems relevant.

RSA458:16-a, II. The trial court is not precluded from awarding a particular asset to one party in its entirety. Dube, 163 N.H. at 582.

In this case, the trial court found, or the record supports, the following facts. The parties met in 1993 and married in January 1994 in Florida. They separated in 1995 when the wife moved to California. Since 1995, the parties have never cohabited, and each party has maintained separate bank accounts and has acquired property without any contribution from the other party.

After moving to California in 1995, the wife acquired interests in, or managed, certain businesses without any contribution from the husband. Additionally, she purchased a home with a friend, again without contribution from the husband. The wife subsequently deeded her interest in the California home to the friend, but at the time of the divorce, she remained obligated on a mortgage secured by the property. At the time of the divorce, the wife was 53 years old, employed, had acquired employment skills through the businesses she had owned, managed, or worked at, and had no disability.

By contrast, the husband was 71 years old at the time of the divorce, was retired, and was disabled. He supported himself through social security, disability income, and retirement income. He additionally was a beneficiary of a trust that he had acquired in 2004 upon the death of his mother. This interest was subject to spendthrift provisions. Shortly before the final hearing, the trust had a value of $131,953. Finally, the husband owned a townhouse in

2

Milford that he purchased in 1999. The wife did not contribute to the purchase or upkeep of the townhouse other than painting a couple rooms during a visit in 2016. At no point did the wife live in the townhouse. The husband testified that, due to its state of disrepair, the townhouse had a value of approximately $90,000.

In 2014, the wife began to request sums of money from the husband on the promise to repay him. The husband sent the wife money in 2014, 2015, 2016, and 2017. Prior to the divorce filing in 2017, the husband sent the wife more than $20,000 in small increments over several months. He testified that each payment was in response to a claimed "crisis." Additionally, in 2014, following a brief visit to New Hampshire, the wife took a new Chevrolet Impala automobile that the husband had recently purchased and financed to California on the promise that she would return with it. At the time of the divorce, the wife still had the Impala in California, and the husband was still making payments on it. At one point in 2017, the wife told the husband that she would drive the car "until it blows up" because she did not know how to maintain it. Shortly before the divorce filing, the wife sent the husband a car repair estimate for the Impala that he determined to be "Photoshopped" and fraudulent. In 2016, the wife attempted to persuade the husband to have her named as an "executor" of his trust. Following the divorce filing, the wife obtained credit by using the husband's name without his permission.

The trial court found that "over the course of their 'marriage', [the wife] ha[d] used [the husband] for the purpose of obtaining money." Specifically, the trial court found that the wife had "attempt[ed] to manipulate [the husband] into sending her money," had taken the Impala, had "attempted to persuade [the husband] to name her as trustee of his trust under false pretenses," and had "fraudulently acquired debt in his name after the parties had filed for divorce." The trial court further found that the wife had "generally mismanaged her funds including gambling." Under these circumstances, the trial court found that it was equitable to award the husband's inheritance and townhouse to him free of any interest of the wife. It additionally awarded to each party any vehicle, including the Impala, then in that party's possession, awarded to each party all interest in any financial account in that party's own name, allocated to the wife all debts that she had incurred in her own name or in the husband's name, and ordered the wife to refinance the loan on the Impala within 60 days.

Upon this record, we cannot say that the trial court's property division exceeded its discretion under RSA 458:16-a. Notwithstanding the length of the marriage, the parties had effectively lived separate and independent lives for more than two decades, cohabiting for only the first year of the marriage. Cf. In the Matter of Munson & Beal, 169 N.H. 274, 281 (2016) (holding that, in equitably dividing property in a divorce following a short-term marriage, the trial court may consider a lengthy period of cohabitation prior to the marriage

3

under the "[a]ny other factor that the court deems relevant" language of RSA 458:16-a, II(o)).  The wife did not contribute toward the acquisition or maintenance of the townhouse other than the de minimis act of painting a couple rooms during a single visit.  RSA 458:16-a, II(f).  Nor did she contribute to husband's interest in the trust, which he received as a testamentary gift approximately nine years after the parties had separated.  RSA 458:16-a, II(n); see also Henderson v. Henderson, 121 N.H. 807, 810 (1981) (holding that, in dividing marital property unequally between divorcing parties, the trial court sustainably exercised its discretion by awarding property to the wife that had either been gifted by her mother or obtained from the sale of such gifts).

Moreover, the record supports the trial court's findings that the wife had engaged in manipulative and deceitful conduct to obtain cash payments and the car, and that she had mismanaged her own property.  RSA 458:16-a, II(f).  Cf. In the Matter of Brownell & Brownell, 163 N.H. 593, 600-01 (2012) (holding that, because the purpose of RSA 458:16-a is to achieve equity, trial court has authority to include property in marital estate that has been wrongfully dissipated by a party).  The record further supports the trial court's findings that the wife has the requisite skills to obtain employment suitable for supporting herself and acquiring future capital assets, while the husband's "opportunity for acquisition of future capital assets is limited, given his age and disability."  RSA 458:16-a, II(b), (c).

We conclude that the trial court's property division, including its award to the husband of 100% of his interests in the townhouse and trust, was supported by the record.  See In the Matter of Kempton & Kempton, 167 N.H. 785, 800 (2015).  Likewise, because the trial court found, based on evidence in the record, that the wife took the Impala, when it was new, on the promise that she would return it, we conclude that the trial court reasonably determined that it was equitable to require the wife to refinance the loan on the Impala so as to remove the husband's liability from it within 60 days.

Finally, we address whether the trial court unsustainably exercised its discretion by denying the wife's request for alimony.  Pursuant to RSA 458:19, I (2018) (amended 2018), the trial court may award alimony if it finds that: (1) the recipient lacks sufficient income, property, or both to provide for her reasonable needs, considering the style of living to which the parties have become accustomed during the marriage; (2) the obligor is able to continue to meet his own reasonable needs, considering the style of living to which the parties have become accustomed during the marriage; and (3) the recipient cannot be self-supporting through appropriate employment at a standard of living that meets reasonable needs.

In this case, the record supports the trial court's findings that the parties, for most of the marriage, lived apart from and financially independent of each other.  The record also supports the trial court's findings that the wife

"is 53 years old, is not disabled in any way[,] . . . is currently employed[,] and has significant skills to obtain employment suitable for supporting herself and acquiring future capital assets." Finally the record supports the trial court's findings that the husband "is 71 years old, retired, and disabled," and that his "opportunity for acquisition of future capital assets is limited, given his age and disability." Under these circumstances, we conclude that the trial court reasonably determined that the wife does not need alimony, and that the husband does not have the ability to pay it. See Kempton, 167 N.H. at 803-04.

Affirmed.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,<br>Clerk**