# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2023-0739, <u>In the Matter of Alexander Bruen and Amanda Bruen</u>, the court on September 9, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The respondent, Amanda Bruen, appeals a decision of the Circuit Court (<u>Zaino</u>, J.), issued following a hearing, that required the parties to equally divide certain debts that were incurred during the marriage, but disclosed after their divorce was finalized. The trial court's order also directed the respondent to pay one-half of the petitioner, Alexander Bruen's, legal fees incurred from the date of a post-divorce contempt finding against the respondent until the sale of the parties' home. We affirm in part, vacate in part, and remand.

On May 13, 2022, the trial court issued its final order on the parties' divorce. With regard to marital debt, the trial court determined that there was "no basis to deviate from the presumption of an equal division." Accordingly, the trial court ruled that "the parties shall equally split all debt incurred prior to the date of separation, January 3, 2020." As to the marital home, the trial court ordered that its equity be divided equally, and it afforded the respondent the option to refinance the mortgage debt and pay the petitioner one-half of the equity, or to sell the home and divide the proceeds evenly. Neither party appealed the final divorce decree. Through a subsequent order, the trial court established timelines for the respondent to communicate whether she intended to sell the property or to purchase the petitioner's interest in it.

However, the sale or refinancing of the home continued to generate disagreement and ultimately resulted in a contempt finding against the respondent for violating a November 14, 2022 order that required her to refinance the property within 45 days. Specifically, the trial court found that:

Respondent has demonstrated no credible attempts to refinance the house or to comply with the orders. For someone who has been a real estate agent for over 25 years, refinancing a house should be easy. As a result, the Court does not find respondent's excuses credible. . . .

It has been almost a year since the order issued and petitioner has suffered as a result of respondent's delays. Respondent, on the

other hand, has had the benefit of a stable living situation in the house, which petitioner does not have, and has continued furthering her career, her rental income from the home, and her social life. Therefore, the Court finds respondent in contempt of the court's orders for failing to refinance the house and/or list it for sale as previously ordered.

As a result, the trial court appointed a commissioner to effectuate the sale of the property. The petitioner sought attorney's fees associated with pursuing and obtaining the contempt ruling, and the trial court deferred ruling on the request, instead providing that:

If respondent is compliant with the requests of the Commissioner and real estate agent regarding showings and keeping the home in show condition, the Court will not order her to pay attorney fees. If respondent interrupts or interferes with the Commissioner, real estate agent, or prospective buyers the Court will order her to pay all of petitioner's legal fees relative to enforcement of the Court's Final Order.

In June 2023, the petitioner filed a verified motion for ex parte relief asserting that the respondent continued to interfere with the sale of the home, had leased the property, and was continuously booking the property for Airbnb guests, which made it difficult for the realtor to show the property. According to the petitioner, the filing of the ex parte motion prompted the respondent's compliance with allowing the home to be shown to prospective buyers, and thereafter the sale moved forward without additional judicial intervention.

As the parties neared the sale of the home, it was discovered that there were two liens on the property: 1) $9,393.51 related to credit-card debt; and 2) $13,052.43 from an auto loan on a previously repossessed 2017 Chevrolet Suburban. Neither debt was disclosed on any party's financial affidavit. Consequently, during the course of the sale of the property, the parties entered into a written agreement to hold $50,000 of the proceeds in escrow to cover these two debts and to address other financial disputes not relevant to this appeal.

Following the sale, the petitioner filed a motion seeking a hearing to clarify the parties' responsibilities regarding these newly-identified debts. The petitioner's motion did not mention the issue of attorney's fees. The trial court granted the motion, scheduling a hearing "only on clarification of debt." At the hearing, the petitioner argued that the credit-card debt and the auto loan were acquired during the marriage and, therefore, should be split equally in accordance with the final divorce decree. The respondent, who was self-represented, did not dispute that the debts were incurred prior to the parties'

2

separation, but instead argued that the 2017 Chevrolet Suburban was purchased by the petitioner to earn income shuttling passengers to the airport, and, therefore should not be attributable to her, and that the credit-card debt was from a card that was in the petitioner's name only and that he had failed to previously disclose. The respondent further asserted that the petitioner purchased the Chevrolet Suburban by providing the dealership with false financial information.

At the hearing, the petitioner also argued that the trial court should impose the attorney's fees that it had deferred ruling on pending the sale of the home. Through an offer of proof made by his counsel, the petitioner testified that the respondent made the sale of the home difficult by canceling showings due to Airbnb bookings, failing to communicate with the realtor as required, and not maintaining the home in a state that allowed for showings. The respondent disputed some of these assertions.

On September 21, 2023, the trial court issued a decision adopting the petitioner's proposed order with limited modifications. Specifically, the trial court ordered the credit-card debt and the remainder of the auto loan to be split evenly between the parties. As to attorney's fees, the trial court awarded fees, but reduced the amount to one-half of that requested, ultimately resulting in a directive for the respondent to pay the petitioner $8,156.25 toward his fees. In doing so, the trial court simply approved the petitioner's proposed factual finding that "during the sale process, [the respondent] attempted on more than one occasion to interfere with the process[.]"

The respondent subsequently obtained counsel and moved for reconsideration, arguing that the trial court's act of hearing argument regarding attorney's fees at the debt-clarification hearing was unfair because the hearing was noticed as being "only on clarification of debt." The respondent also substantively challenged the trial court's finding that fees were warranted as well as the propriety of certain billing entries. The respondent further contended that the equal division of the remainder of the auto loan was improper. The trial court denied the respondent's motion for reconsideration without additional analysis. The respondent appealed to this court.

We first address the respondent's argument that the trial court's consideration of alleged further acts of contempt and attorney's fees at the September 18, 2023 hearing violated her right to due process because the petitioner did not move to impose fees in advance of the hearing and the trial court previously indicated that the hearing would pertain to the clarification of debt only. We agree.

"Under both Part I, Article 15 of the New Hampshire Constitution and the Fourteenth Amendment of the Federal Constitution, an elementary and

3

fundamental requirement of due process is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Douglas v. Douglas, 143 N.H. 419, 423 (1999) (quotation omitted). "In the divorce context, notice to the parties must give . . . actual notice of the hearing and the issues to be addressed." Id. (emphasis added). In Duclos v. Duclos, we reversed the trial court's decision and remanded where the notice to the wife "indicated the matter to be considered was a 'default hearing.'" Duclos v. Duclos, 134 N.H. 42, 45 (1991). We decided that "from this terse notice a reasonable person receiving the court's notice would not have been fairly informed that a final hearing on the merits in the named divorce action would be held on the scheduled date." Id.

We reach a similar conclusion here. On or about July 12, 2024, the petitioner filed a motion that explicitly sought a hearing to clarify the parties' debt. The petitioner did not file a motion seeking the imposition of attorney's fees, and his motion for a hearing did not mention attorney's fees or make any allegations pertaining to the respondent's non-compliance with a court order or her behavior during the sale process. Likewise, the trial court's order granting the motion for hearing stated, "30-minute hearing to be scheduled only on clarification of debt." (Emphasis added.)

Therefore, as in Duclos, we find that the trial court's consideration of testimony and argument related to the respondent's alleged disruption of the sale process, without notice that this topic would be covered at the hearing, deprived her of the ability to "adequately prepare" a response to the petitioner's accusations and therefore violated her right to due process. See Duclos, 134 N.H. at 45; cf. Morphy v. Morphy, 112 N.H. 507, 510 (1972) (concluding renewal of support order improper because issue was not noticed and "[t]he defendant must be allowed to prepare for the many factual issues involved in such a hearing"). Accordingly, we vacate the trial court's decision regarding attorney's fees and remand for further proceedings consistent with this order, which may include a noticed hearing at which the issues of further contempt and the imposition of attorney's fees are addressed. In light of our decision to remand, we need not reach the respondent's additional arguments regarding the trial court's award of attorney's fees.

We next address the respondent's arguments that the trial court erred when it required the petitioner and her to evenly split the credit card and auto loan debt that was in the petitioner's name only and not included on his prior financial affidavit. The trial court has broad discretion in dividing assets and debts in divorce proceedings. In the Matter of Spenard & Spenard, 167 N.H. 1, 3 (2014). We will not overturn the trial court's rulings on such matters absent an unsustainable exercise of discretion, reviewing the record only to determine whether it contains an objective basis to sustain its discretionary judgments.

4

Id. We assume that the trial court made all findings of fact necessary to support its general rulings. See In the Matter of Dube & Dube, 163 N.H. 575, 579 (2012); In the Matter of Hampers & Hampers, 154 N.H. 275, 289-90 (2006). If the trial court could reasonably have reached its findings, including its implied findings, on the evidence before it, they will stand. Spenard, 167 N.H. at 3; Dube, 163 N.H. at 579; Hampers, 154 N.H. at 290.

Upon review of the record, we conclude that the trial court did not err by requiring the parties to evenly divide the credit card and auto loan debt. The May 13, 2022 final divorce decree shows that the trial court carefully reviewed the parties' debt and concluded that "based on the length of the marriage [and] the contributions of both sides to the acquisition of property and debt[,]" an "equal division of the marital debt" was appropriate. Further, the parties' financial affidavits, filed in conjunction with the prior divorce proceedings, reflect that near the time of their separation the parties shared various debts, including debt from numerous credit cards. Neither party appealed or moved to modify the final decree. See Sommers v. Sommers, 143 N.H. 686, 689 (1999) (describing limited circumstances in which the trial court may modify a final property division in a divorce). Accordingly, we conclude that the trial court did not err when it determined that the two additional debts, uncovered during the process of selling the marital home,[1] were likewise marital debt subject to equal division per the final divorce decree. See Matter of Sanborn, 174 N.H. 343, 353 (2021) ("RSA 458:16-a provides that in ordering an equitable division of property between the parties, the court 'shall presume that an equal division is an equitable distribution of property."). We therefore affirm the trial court's equal division of the additional marital debt that was secured by the home and discovered during the sale process.

Affirmed in part, vacated in part, and remanded.

MacDonald, C.J., and Bassett, Donovan, and Countway, JJ., concurred.

**Timothy A. Gudas,
Clerk**

---

[1] At the hearing, the petitioner's counsel informed the trial court that the lien related to the credit card-debt was "recorded a week before the closing[.]" Specifically, counsel explained, "essentially what happened is, when we spoke to the counsel representing Midland Credit, they said, oh, there's another one we haven't recorded, we're going to do it now because you are closing next week . . . . So that came to light a week before the closing."

5