**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2023-0706, <u>In the Matter of Jonathan Kent and Lei Luo</u>, the court on May 2, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The petitioner, Jonathan Kent (Husband), appeals the final decree entered by the Circuit Court (<u>Derby</u>, J.) in his divorce from the respondent, Lei Luo (Wife). On appeal, Husband challenges the trial court's parenting plan and property division. Wife cross-appeals challenging the property division. We affirm.

I.    <u>Background</u>

The record supports the following facts. Wife is a citizen of China and Husband is a United States citizen. The parties were married in 2010. During the marriage, Husband worked as a translator and invested in cryptocurrency. At the time of the trial court's final order, the cryptocurrency portfolio was valued at more than $9 million.

The parties had two children, born in 2015 and 2018. The family moved to Bedford in 2020. Wife was arrested on domestic violence charges in 2021 and the parties separated. In April 2022, the trial court ordered a temporary parenting plan that limited Wife's time with the children to supervised visits and video conferencing. Husband filed for divorce in May 2022. Wife's criminal matter was referred to an alternative treatment court in February 2023.

The trial court held a final hearing on the divorce petition in March and June 2023. The court then issued a final order on the divorce petition including a property division and a parenting plan. Concerning the property division, the court found that Husband's decision to invest in and hold cryptocurrency "provided a substantial financial windfall to the family" and that "roughly 98% of the cryptocurrency portfolio represent[ed] capital gains on the initial investment." The court also found that Husband made some contributions to Wife's educational costs during the marriage. The court concluded that "[t]hese facts weigh in favor of an unequal property division favoring [Husband]." Accordingly, the court awarded Husband 54.25% of the marital property and Wife 45.75%.

Concerning the parenting plan, the trial court found that the supervised parenting arrangement under the temporary orders was not "healthy or in the long-term best interests of the children." The court stated that supervised visitation "is unnatural and sends the message to the children that [Wife] is unsafe" and "[t]he longer this goes on, the more strongly this impression is and will become permanently fixed in the children's minds." However, the court also acknowledged that there was a "chance that [Wife] could remove the children to China, never to return." The court found that on at least one occasion after September 2021, Wife threatened Husband that she would take the children to China. The court stated that "the status quo is unacceptable and contrary to the children's best interest" and, therefore, it "drafted a permanent parenting plan that balances" the identified "competing risks."

The court ordered Wife to have unsupervised parenting time with one child at a time for short periods until the younger child turned eight. At that point, Wife would have limited unsupervised parenting time with both children. When the younger child turned eleven, the parties would transition to a fully shared parenting schedule. The court also placed significant portions of Wife's share of the marital assets in a trust, until the younger child turned eleven, to help guard against any potential abduction.

Husband unsuccessfully moved for reconsideration. Husband's appeal and Wife's cross-appeal followed.

II.    Analysis

On appeal, Husband argues that, given evidence in the record suggesting a credible and substantial risk that Wife might abduct the children to China, the trial court's "decision to immediately implement an unsupervised Parenting Plan was an unsustainable exercise of discretion." Husband argues that the court erred as a matter of law "when it rejected supervised visitation based upon its own opinion that supervised visitation was harmful to the parties' children." Further, Husband asserts that the court erred in denying his request to be awarded 60% of the estate, rather than 54.25%. On cross-appeal, Wife argues that an unequal property division was not supported by the evidence. We find no error in the trial court's rulings.

The trial court has broad discretion in fashioning a final divorce decree. In the Matter of Braunstein & Braunstein, 173 N.H. 38, 46 (2020). The trial court's discretion includes decisions concerning property division and parenting rights and responsibilities. See id. We will not overturn the trial court's rulings on such matters absent an unsustainable exercise of discretion, reviewing the record only to determine whether it establishes an objective basis to sustain the trial court's discretionary judgments. See id. at 47. If the trial court could reasonably have reached its findings on the evidence before it, they will stand. See id. We defer to the trial court's judgment in resolving conflicts

2

in testimony, evaluating the credibility of the witnesses, and determining the weight of the evidence presented.  See id.  We will not substitute our judgment for that of the trial court.  In the Matter of Kempton & Kempton, 167 N.H. 785, 799 (2015).  Nor will we reweigh the equities.  See In the Matter of Heinrich & Heinrich, 164 N.H. 357, 365 (2012).

We begin with Husband's arguments related to the parenting plan.  He argues that there is "no evidence in the record concerning the alleged adverse impact of supervised visitation on the health of the children."  Further, Husband asserts that the trial court erred in awarding unsupervised parenting time to Wife because the guardian ad litem (GAL) "strongly recommended supervised visitation because of the credible risk of abduction to China" and because the court found Husband's expert at trial credible when he testified to the risk of abduction.

The trial court's order providing Wife with unsupervised parenting time with the children was premised on the court's finding that continued supervised parenting time caused "steady and ongoing harm to the children and [Wife's] parental rights."  Contrary to Husband's arguments, the record contains an objective basis to sustain the court's ruling.  At trial, Wife testified that the supervised visits were "getting more and more difficult."  She testified that the children would ask "why they couldn't live with mom" and suggested that "they would like to have more intimate contact with [Wife]."  Wife testified that she did not think continued supervised visits would be in the children's best interest.  She testified that video visits were becoming "more and more artificial . . . with a lot of confusion and hesitation" with the children.  For example, she testified that her daughter "would hesitate to . . . get close to me and she would refuse to see me."

Husband's arguments regarding the impact of the GAL's testimony and Husband's expert's testimony effectively ask us to reweigh the equities in this case.  That is not our role on appeal.  See Heinrich, 164 N.H. at 365.  Rather, we defer to the trial court's judgment in resolving conflicts in testimony, evaluating the credibility of the witnesses, and determining the weight of the evidence presented.  Braunstein, 173 N.H. at 47.  Based upon the record before us, we cannot conclude that the trial court engaged in an unsustainable exercise of discretion in fashioning its parenting plan.  Accordingly, we affirm the trial court's ruling.

The parties each take issue with the trial court's property division order.  Wife argues that the unequal property division was not supported by the evidence.  Husband argues that, although the trial court "found substantial reasons to equitably deviate from an equal distribution," the court erred in limiting Husband's property distribution to 54.25% and when it did "not explain the basis for rejecting [Husband's] request for a 60% distribution contrary to RSA 458:16-a, IV."

3

"When a dissolution of a marriage is decreed, the court may order an equitable division of property between the parties." RSA 458:16-a, II (Supp. 2024). "The court shall presume that an equal division is an equitable distribution of property, unless the court . . . decides that an equal division would not be appropriate or equitable after considering" various factors, including "[t]he actions of either party during the marriage which contributed to the growth . . . in value of property," and "[a]ny direct or indirect contribution made by one party to help educate or develop the career or employability of the other party." RSA 458:16-a, II(f), (h). The trial court need not consider all the enumerated factors or give them equal weight. Heinrich, 164 N.H. at 363-64.

The statute also requires the trial court to "specify written reasons for the division of property which it orders." RSA 458:16-a, IV (Supp. 2024). "Further, if the court concludes that an unequal distribution of property is warranted, it should state its reasons and make specific findings and rulings supporting its decision." In the Matter of Dube & Dube, 163 N.H. 575, 582 (2012) (quotation omitted). "A court can satisfy these requirements by citing facts from the record that reflect the factors listed in RSA 458:16-a." Id.

Citing testimony at trial, the trial court found that Husband's cryptocurrency investing and contributions to Wife's education costs weighed "in favor of an unequal property division favoring [Husband.]" The court made specific rulings of law consistent with this finding, citing, inter alia, RSA 458:16-a, II(f) and RSA 458:16-a, II(h). As described above, the court could consider either of these statutory factors in determining that "an equal division would not be appropriate or equitable." RSA 458:16-a, II. As to Wife's argument, we have reviewed the trial court's factual findings that led to its property distribution and conclude that those findings are supported by the record. On this record, the court's unequal distribution of the marital property constitutes a sustainable exercise of discretion. Likewise, we cannot conclude that the court's 54.25% distribution to Husband, rather than a 60% distribution, amounts to an unsustainable exercise of discretion. See In the Matter of Hampers & Hampers, 154 N.H. 275, 285 (2006) ("[W]e afford trial courts broad discretion in determining matters of property distribution in fashioning a final divorce decree."). Contrary to Husband's argument that the court "failed to explain the basis for the deviation," the court's order complies with RSA 458:16-a, IV as it cited "facts from the record that reflect the factors listed in RSA 458:16-a." See Dube, 163 N.H. at 582. Accordingly, we affirm the trial court's property division ruling.

4

To the extent that Husband raised an additional argument, it does not warrant further discussion.  See <u>Vogel v. Vogel</u>, 137 N.H. 321, 322 (1993).

<u>Affirmed</u>.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**