NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court – Derry Family Division
No. 2013-343


IN THE MATTER OF SUSAN SPENARD AND DAVID SPENARD

Submitted: May 15, 2014
Opinion Issued: October 17, 2014


Bossie & Wilson, PLLC, of Manchester (Jon N. Strasburger, on the brief), for the petitioner.


David Spenard, self-represented party, by brief.


HICKS, J.  The petitioner, Susan Spenard, appeals final orders of the Circuit Court (Sadler, J.) in her divorce from the respondent, David Spenard. She argues that the trial court erred by:  (1) imputing income to her of $4,000 per month for purposes of child support and alimony; (2) denying her request to reopen the case based upon newly-discovered medical evidence; (3) not accounting for two promissory notes, one of which the respondent sold prior to the final hearing, in dividing the marital estate; and (4) misidentifying two investment accounts, and awarding the respondent an interest in one of the accounts.  We affirm in part, vacate in part, and remand.

The trial court found the following facts.  The parties were married in June 1998. One child was born during the marriage.  Both of the parties worked during the marriage.  The respondent has been involved in many businesses over the years but mainly doing real estate title work and closings. His work is cyclical with the real estate market and his business has declined

recently. The respondent sold a real estate business in 2007, for which he received approximately $450,000. He invested some of the money and used some to start his title company. After the title business began to decline, the respondent used the remaining money from the sale of his real estate business to pay taxes and monthly bills. He found steady employment with the State of New Hampshire in October 2012, earning about $1,600 bi-weekly.

The petitioner worked as an entertainer throughout the parties' relationship. She worked long hours and four to five days per week until the couple's child was born. After that, she worked one to two days per week. The petitioner claims that she has not been working due to ongoing health issues since about June 2012.

The parties filed a joint petition for divorce in January 2010. In December 2012, the court held a final hearing. At the hearing, the petitioner presented no expert medical testimony to support her position that she is unable to work. Following the court's notice of decision on January 23, 2013, the petitioner filed a motion for reconsideration, asking the court to reconsider various issues and reopen the case to consider new medical evidence that supported her claim that she is unable to work. The trial court denied the petitioner's motion. This appeal followed.

A trial court has broad discretion in fashioning a final decree of divorce, In the Matter of Brownell & Brownell, 163 N.H. 593, 596 (2012), and in managing the proceedings before it, In the Matter of Sawyer & Sawyer, 161 N.H. 11, 18 (2010). Its discretion necessarily encompasses decisions concerning child support, alimony, and property distribution. Brownell, 163 N.H. at 596. Its discretion likewise includes whether to reopen a matter based upon newly-discovered evidence. See Town of Weare v. Paquette, 121 N.H. 653, 660 (1981); Bricker v. Sceva Speare Mem'l Hosp., 114 N.H. 229, 231 (1974).

We will not overturn a trial court's rulings absent an unsustainable exercise of discretion. See Brownell, 163 N.H. at 596; Sawyer, 161 N.H. at 18 (deferring to the trial court on matters such as "resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence"); In the Matter of Aube & Aube, 158 N.H. 459, 465 (2009). "This means that we review the record only to determine whether it contains an objective basis to sustain the trial court's discretionary judgment[s]." In the Matter of Hampers & Hampers, 154 N.H. 275, 281 (2006). "If the court's findings can reasonably be made on the evidence presented, they will stand." Brownell, 163 N.H. at 596 (quotation omitted).

We first address whether the trial court erred by imputing a monthly income of $4,000 to the petitioner. In calculating gross income for purposes of child support, the trial court has discretion to consider "the difference between

the amount a parent is earning and the amount a parent has earned in cases where the parent voluntarily becomes unemployed or underemployed, unless the parent is physically or mentally incapacitated." RSA 458-C:2, IV(a) (Supp. 2013). Whether a party is voluntarily unemployed or underemployed is a question of fact for the fact finder, whose decision we will not disturb if it is supported by the evidence. In re Muller, 164 N.H. 512, 521 (2013).

In this case, the record establishes that the petitioner worked as an entertainer throughout the parties' marriage. At trial, however, she testified that she had not worked for six months due to health issues. The respondent testified that, during the marriage, the petitioner would earn at least $1,000 per night when she worked. A private investigator testified that he had anonymously interviewed the petitioner. During the interview, the petitioner claimed that she could make $1,200 to $1,600 per night. The petitioner did not dispute the testimony of either the respondent or the investigator.

The record also reflects that the petitioner spent large sums of money on discretionary expenses during the six months in which she claimed she was unable to work. Specifically, the trial court found that the petitioner made discretionary expenditures of more than $1,500 between June and August 2012, more than $1,600 between August and October 2012, and more than $1,400 between October and December 2012.

Finally, the trial court noted that the petitioner has an associate's degree, and that "there is no medical reason to show she can't work some job even part-time." With respect to the petitioner's assertion that she had not been working because of health issues, the trial court observed that "there was no expert medical testimony to support [her] position that she is unable to work."

Based upon all of the evidence, the trial court imputed income to the petitioner of at least $1,000 per night for a minimum of one night per week, or approximately $4,000 per month. On appeal, the petitioner argues that the trial court erred by imputing income to her because it did not expressly find that she is voluntarily unemployed. She further argues that, in finding that she could continue to work as an entertainer, the trial court failed to consider that she was forty-five years old at the time of the final hearing, and that she had a medical disability preventing her "from not only returning to her former work . . . but also from any gainful employment." Finally, she argues that the private investigator's testimony was unreliable because the investigator had interviewed her more than two years prior to trial.

We agree with the respondent that RSA 458-C:2, IV(a) does not require an express finding of voluntary unemployment. In the Matter of Donovan & Donovan, 152 N.H. 55, 58 (2005). In this case, the trial court's finding that the petitioner is voluntarily unemployed is implied in its order. With respect to the

3

petitioner's age, her claim that she is medically unable to work, and the amount of time that had passed since the investigator had interviewed her, we conclude that these matters were for the trial court to evaluate in weighing the evidence and determining the credibility of the witnesses. Aube, 158 N.H. at 465. Upon this record, we conclude that there was more than ample support for the trial court's implied finding that the petitioner is voluntarily unemployed, and its express finding that she has the ability to earn $4000 per month.

We next address whether the trial court erred by denying the petitioner's request to reopen the case. After the trial court issued its final decree, the petitioner moved for reconsideration, arguing, in part, that prior to the final hearing she had been unable to obtain medical evidence substantiating her claim of disability because the respondent had failed to provide health insurance in accordance with the temporary orders. She further alleged that the respondent had encouraged her not to seek medical attention until after his new health plan went into effect, that his new health plan went into effect after the final hearing, that she had since consulted with a neurologist, and that the neurologist had diagnosed her with a chronic illness impairing her ability to work. She requested a new hearing to "present additional evidence which was not in her possession at the time of the final hearing due to no fault of her own."

Any party seeking to reopen a case in order to submit new evidence must establish that the party was not at fault in failing to discover the evidence prior to the earlier trial. Paquette, 121 N.H. at 660; Bricker, 114 N.H. at 231. The petitioner argues that she was not at fault for failing to discover her medical diagnosis by the time of the final hearing because the failure was attributable to the respondent's failure to comply with temporary orders.

The record establishes that the respondent was found in contempt of his obligations to provide health insurance, and to pay child support, alimony, and the mortgage on the marital home. The record also reflects, however, that by May 11, 2012, more than seven months prior to trial, he had brought his child support and alimony obligations current, he had brought the marital residence out of foreclosure, and he had obtained health coverage for the petitioner. Although the health insurance policy had a high deductible, the trial court made the respondent solely responsible for any amount of the deductible that exceeded the deductible under the parties' prior policy. Under these circumstances, the trial court reasonably could have determined that the petitioner was at fault for failing to obtain a medical diagnosis prior to trial.

We next address whether the trial court erred by failing to account for promissory notes in dividing the marital estate. The record reflects that in May 2012, at the start of the originally-scheduled final hearing, the petitioner

4

asserted that she had "recently found out [that the respondent] had sold a note and secured funds to allegedly bring current the debts required by the court's orders." The respondent admitted that he had recently sold a note, but stated that he did not have documentation with him regarding the sale. Over his objection, the trial court continued the final hearing, and ordered the respondent to produce documentation regarding the sale within thirty days.

The respondent subsequently produced documents showing that he was the holder of two promissory notes: one dated January 19, 2007, in a total principal amount of $190,000, and the other dated March 3, 2010, in the amount of $20,000. The respondent sold the $190,000 note on April 20, 2012, and on that same date, deposited $80,941 into his checking account. On May 23, 2012, the respondent's bank notified him that it had charged his checking account $45,150.36 as a setoff for a separate obligation. At the final hearing, the respondent testified that he sold the $190,000 note for approximately $80,000. He further suggested that the funds taken by the bank consisted of proceeds from the sale.

The respondent did not disclose either the $190,000 note or the $20,000 note as an asset on his financial affidavits. In a financial affidavit filed on May 10, 2012, a few weeks after the respondent had sold the $190,000 note, he disclosed monthly income from a promissory note of $166, and a checking account having a value of $68,500. In the financial affidavit he filed at the time of the December 2012 final hearing, he did not disclose any promissory note income, and disclosed a checking account balance of only $950.

In the final decree, the trial court awarded the parties "their respective checking and/or savings bank accounts, credit union accounts, certificates of deposits and the like, and all similar accounts as shown on their individual financial affidavits filed with the court." The decree is silent, however, with respect to the promissory notes. In her motion for reconsideration, the petitioner argued that the notes constituted marital property, and that the trial court had failed to account for them. She requested that the trial court modify the property division to account for her equitable interest in the notes. The trial court denied the motion without explanation.

Under our property settlement statute, "[p]roperty shall include all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties." RSA 458:16-a, I (2004). "Property subject to equitable distribution includes any property acquired up to the date of a decree of legal separation or divorce." In the Matter of Heinrich & Heinrich, 164 N.H. 357, 359 (2012) (quotation omitted); see also RSA 458:16-a, II (2004). We have held that assets that are dissipated during the course of a divorce are subject to equitable distribution like any other marital asset. Brownell, 163 N.H. at 600-

5

01.  The petitioner argues that in dividing the marital estate, the trial court erred by not accounting for either the funds that the respondent received from the sale of the $190,000 note, which she claims he sold in violation of the court's anti-hypothecation order, or the value remaining on the $20,000 note.

In his memorandum of law, the respondent does not contest that his sale of the $190,000 note violated the anti-hypothecation order, or that the notes were "property" for purposes of RSA 458:16-a (2004).  See In the Matter of Preston and Preston, 147 N.H. 48, 50-51 (2001) (holding that an annuity constitutes property subject to equitable distribution).  Instead, he argues that "[t]he trial court's findings regarding [the] promissory notes were deliberate, reasonable and based on evidence and testimony presented, negating the petitioner's claim of error and/or unsustainable exercise of discretion."  Contrary to the respondent's argument, however, the trial court did not make any findings regarding the promissory notes.  Indeed, the respondent did not even disclose the notes as assets on his financial affidavits.  Because the trial court apparently did not consider the notes in dividing the marital property, we vacate the property distribution, and remand for specific findings and rulings consistent with this order.  See In the Matter of Nassar & Nassar, 156 N.H. 769, 780 (2008).

Because we have vacated the trial court's property distribution, we need not address the petitioner's arguments that the trial court erred by misidentifying two investment accounts, and by awarding the respondent an interest in one of the accounts.  The petitioner may raise these issues on remand.  We note, however, that one of the arguments, which the petitioner raises for the first time on appeal, challenges the trial court's jurisdiction to divide the investment accounts.  Specifically, despite the fact that the petitioner disclosed the accounts as assets on her financial affidavit, and testified that they were funded with cash she gave to her father to invest on her behalf, she now asserts that her parents had ownership interests in the accounts, and that the trial court, therefore, lacked jurisdiction to invalidate her parents' interests.  See Muller, 164 N.H. at 518-20 (finding that family division lacks jurisdiction to invalidate interest in marital property held by third party).

Resolving this jurisdictional challenge would require findings of fact concerning the nature of the accounts, and the ownership interests of the petitioner and any third parties in them.  See id.; In the Matter of Chamberlin & Chamberlin, 155 N.H. 13, 17-18 (2007) (holding that, because the parties had no right to invade the corpus of an irrevocable trust, funds given to the trust were not marital property for purposes of RSA 458:16-a, but that the parties' right to receive income from the trust was marital property subject to equitable distribution).  Accordingly, in the event that the trial court, upon remand, awards the respondent an interest in either account, it shall make

findings of fact, consistent with this order, concerning the interests in the accounts of the petitioner and any third parties.

We leave to the trial court's discretion whether a further evidentiary hearing upon remand is warranted.

<u>Affirmed in part; vacated in part; remanded</u>.

DALIANIS, C.J., and CONBOY, LYNN and BASSETT, JJ., concurred.