# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2020-0197, <u>In the Matter of Rhonda Keogh and John Keogh</u>, the court on March 23, 2021, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  The petitioner, Rhonda Clark f/k/a Rhonda Keogh, appeals orders of the Circuit Court (<u>Hall</u>, J.), issued following a hearing on a motion by the respondent, John Keogh, to modify child support based upon the passage of three years, <u>see</u> RSA 458-C:7, I (2018), in which the trial court: (1) ordered the respondent to pay monthly child support of $0; and (2) declined to compel the respondent to pay certain child support under the prior support order.  The petitioner argues that the trial court erred by finding that she is voluntarily underemployed, imposing a support obligation of $0, and not compelling the respondent to pay child support owed under the prior support order.  We affirm in part, reverse in part, vacate in part, and remand.

The trial court has broad discretion in reviewing and modifying child support orders.  <u>In the Matter of Ndyaija & Ndyaija</u>, 173 N.H. 127, 140 (2020).  We will uphold the trial court's rulings regarding child support absent an unsustainable exercise of discretion or error of law.  <u>Id</u>.  In reviewing whether the trial court sustainably exercised its discretion, we examine whether the record establishes an objective basis sufficient to sustain the trial court's discretionary judgments.  <u>In the Matter of Silva & Silva</u>, 171 N.H. 1, 4 (2018).  The trial court's factual findings are binding upon us if they are supported by evidence and are not legally erroneous.  <u>In the Matter of Summers & Summers</u>, 172 N.H. 474, 479 (2019).  Resolving conflicts in testimony, determining the credibility of witnesses, and evaluating the weight of the evidence presented are matters for the trial court to resolve.  <u>Id</u>.

RSA chapter 458-C (2018 & Supp. 2020), which codifies the New Hampshire child support guidelines, establishes a uniform system to determine the amount of child support awards.  <u>Silva</u>, 171 N.H. at 4.  The statute's purposes include establishing uniformity in determining the amount of child support obligations and ensuring that both of a child's parents share in the responsibility to support the child according to the relative percentage of each parent's income.  <u>Id</u>.  There is a rebuttable presumption that the amount of a child support award calculated pursuant to the statute is correct.  <u>Ndyaija</u>, 173 N.H. at 141; RSA 458-C:4, II.  That presumption may be overcome, however, if a party demonstrates by a preponderance of evidence that application of the guidelines would be "unjust or inappropriate" due to "[s]pecial circumstances."  RSA 458-C:4, II, :5, I; <u>Ndyaija</u>, 173 N.H. at 141-42.

RSA 458-C:5, I, contains a non-exhaustive list of special circumstances that, if raised by a party or the court, the trial court must consider in determining whether to deviate from the child support guidelines. Ndyaija, 173 N.H. at 142. "Special circumstances" include only those circumstances that are economic in nature and relate to the impact of a parent's financial condition on his or her ability to meet the child's needs. Id. The trial court must consider any relevant special circumstance in light of the best interest of the child. Id.; RSA 458-C:5, I. In deviating from the child support guidelines, the trial court is required to make specific findings of fact as to why a special circumstance justifies deviating from the child support guidelines in order to avoid an unjust or inappropriate result. Silva, 171 N.H. at 4; RSA 458-C:4, II.

In this case, the trial court imputed gross monthly income to the petitioner of $2,917 on the basis that she is voluntarily underemployed. See RSA 458-C:2, IV(a). Whether a party is voluntarily underemployed is a question of fact, In the Matter of Spenard & Spenard, 167 N.H. 1, 3 (2014), and we reject the petitioner's argument that the finding of voluntary underemployment in this case was not reasonably supported by the evidence. The trial court further determined that the respondent's gross monthly income is $14,606. Pursuant to the child support guidelines, the trial court determined that the respondent's monthly child support obligation would be $3,263.[1]

In deviating downward from this amount to $0, the trial court first cited RSA 458-C:5, I(c), which allows the court to deviate from the guidelines based upon "[t]he economic consequences of the presence of stepparents, step-children or natural or adopted children." The trial court found that, based upon the income of her current spouse, the petitioner is "able to enjoy a very comfortable lifestyle," and that the parties' three children "benefit from the lifestyle that [the spouse's] income allows when they are with [the petitioner, her spouse,] and their toddler son." The trial court further relied upon RSA 458-C:5, I(h)(2)(C), which allows the court to deviate from the guidelines based upon the parties' parenting schedule when "the income of the lower earning parent enables that parent to meet the costs of child rearing in a similar or approximately equal style to that of the other parent." The trial court found that the petitioner's "household income demonstrates that she is able to afford the costs associated with maintaining her home, and other child rearing expenses, such as food, clothing, school supplies, and family vacations." In contrast to the petitioner, the trial court found that the respondent "is not able to meet the costs of child rearing in a manner similar to that in the mother's home if required to pay guideline child support."

_____

[1] In arriving at this figure, it appears that the trial court utilized a monthly gross income figure for the petitioner of $2,971, not the $2,917 monthly income (or $35,000 annual income) figure that it had imputed to the petitioner in its narrative order. Because the accuracy of the trial court's calculation of the child support guidelines amount is not before us, we will assume, without deciding, that $3,263 per month accurately reflects what the respondent would owe in child support under the child support guidelines.

Contrary to the trial court's analysis, RSA 458-C:5, I(h)(2)(C) allows the trial court to deviate from the guidelines when "<u>the income of the lower earning parent</u> enables that parent to meet the costs of child rearing in a similar or approximately equal style to that of the other parent." RSA 458-C:5, I(h)(2)(C) (emphasis added). Here, the petitioner, not the respondent, is the "lower earning parent." The trial court did not consider whether the petitioner's imputed income of $2,917 allows her to meet the costs of child rearing in a similar or approximately equal style of living that the respondent's $14,606 allows him to provide the children. Instead, it considered the petitioner's "household income," that is, the income from her spouse. The trial court's findings are insufficient to establish that the petitioner, on an income of $2,917, is able to provide the children with a style of living similar to that which the respondent can provide on an income of $14,606. <u>See</u> <u>Silva</u>, 171 N.H. at 8 (ruling that, although children benefitted from property awarded to mother, the trial court's findings were insufficient to support its conclusion that, notwithstanding a monthly income disparity of $4,000, mother's income allowed her to meet costs of child rearing in manner similar to that of father).

Although the trial court also cited RSA 458-C:5, I(c), its findings of fact fail to establish the actual economic impact that the spouse's salary has on the petitioner's ability to meet her children's needs with a gross income of $2,917 when compared with the style of living the respondent is able to provide with a gross income of $14,606. Moreover, as the petitioner observes, the trial court's analysis under RSA 458-C:5, I(c) fails to account for the economic impact of the child that she has with her spouse, or of the support that the respondent testified he also receives from his domestic partner. Accordingly, we vacate the trial court's decision to deviate from the guidelines amount of $3,263 to $0, and remand for further proceedings consistent with this order.

Finally, we address the petitioner's argument that the trial court erred by not compelling the respondent to pay child support owed under the prior support order. The trial court made its modified child support order effective February 1, 2020. Under the prior support order, the respondent was obligated to pay child support of 20% on all commissions and bonus income. The petitioner asserts, and the respondent does not dispute, that the respondent did not pay child support on commissions earned in January 2020, when the prior order was in effect. The respondent contends that, because his payment of child support on January 2020 commissions was not "due" under the terms of the prior support order until February 7, 2020, and because the new support order was effective February 1, 2020, he was not obligated to pay child support on the January 2020 commissions. In denying the petitioner's motion to compel payment of child support on the January 2020 commission

3

income, the trial court reasoned that the motion was "moot, given that the final hearing was held on 1/24/2020 and orders have issued."[2]

The motion was not "moot." Under the prior child support order, which was in effect prior to February 1, 2020, the respondent was obligated to pay child support of 20% on all commission and bonus income received over his base salary. The respondent does not dispute that he did not comply with this obligation with respect to commission income received in January 2020. Although the respondent's ultimate payment of child support to the petitioner based upon January 2020 commission income may not have been "due" until February 7, 2020, his obligation arose when he received the income and, thus, he was subject to the support order then in effect. Accordingly, the trial court erred by denying the motion to compel.

In sum, we affirm the trial court's determination that the petitioner is voluntarily underemployed, vacate its decision to award $0 in child support, reverse its denial of the petitioner's motion to compel the payment of child support on commission income earned in January 2020, and remand for further proceedings consistent with this order.

Affirmed in part; reversed in part; vacated in part; and remanded.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**

---

[2] We note that, according to the trial court's order on the merits of the respondent's motion to modify child support, the final hearing was held on November 20, 2019, not January 24, 2020; rather, the trial court's order on the merits of the motion to modify was issued on January 24, 2020.

4