# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2020-0081, <u>In the Matter of Lenny Pham and Bichngo Pham</u>, the court on June 7, 2021, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The petitioner, Lenny Pham (husband), appeals an order of the Circuit Court (<u>DalPra</u>, M., approved by <u>Stephen</u>, J.), following an evidentiary hearing, dismissing his petition to annul his marriage to the respondent, Bichngo Pham (wife), on the basis that he did not prove that the wife was legally married to another at the time of the parties' 1987 marriage. <u>See</u> RSA 458:1, :2 (2018). The husband argues that the weight of the evidence compelled findings that the wife was married, and knew she was married, to someone else when the parties married. He further argues that the Trial Court (<u>Alfano</u>, J.) erred by denying his motion for reconsideration, through which he sought to introduce new evidence and requested a new hearing. We affirm.

RSA 458:1 provides that "[a]ll marriages . . . where either [party] has a former wife or husband living, knowing such wife or husband to be alive and knowing that their marriage had not been legally dissolved, if solemnized in this state, shall be absolutely void without any legal process." Under RSA 458:2, "[i]f any doubt exists whether any marriage is void, . . . a petition may be filed as in other cases, and a decree of divorce or nullity may be made." Whether the wife was legally married to another, and knew of this fact, at the time that the parties married raises questions of fact on which the husband bore the burden of proof. <u>See</u> <u>Hilliard v. Baldwin</u>, 76 N.H. 142, 143 (1911).

We will uphold the trial court's findings unless they are unsupported by the evidence or legally erroneous, <u>In the Matter of Kempton & Kempton</u>, 167 N.H. 785, 798 (2015), deferring to the trial court on matters such as resolving conflicts in testimony, evaluating credibility, and determining the weight of evidence, <u>In the Matter of Aube & Aube</u>, 158 N.H. 459, 465 (2009). The trial court may accept or reject, in whole or in part, the testimony of any witness, and is not required to believe uncontested evidence. <u>Aube</u>, 158 N.H. at 466.

We will uphold the trial court's ruling on a motion for reconsideration, including a decision not to reopen the record and accept new evidence on reconsideration, absent an unsustainable exercise of discretion. <u>In the Matter of Geraghty & Geraghty</u>, 169 N.H. 404, 419 (2016); <u>In the Matter of Spenard & Spenard</u>, 167 N.H. 1, 3 (2014). In applying this standard, we examine the

record only to determine whether it contains an objective basis sufficient to sustain the trial court's discretionary judgment. Spenard, 167 N.H. at 3.

The record in this case establishes that the parties were married in Salem in 1987. They had previously emigrated from Vietnam. At the time of the marriage, the husband was aware that the wife, while living in Vietnam twelve years earlier, had had a child with another man, Quyen Van Nguyen (Quyen). Quyen immigrated to the United States with the child in 1983, married someone else in 1985, and settled in Maryland. Throughout the course of their marriage, the husband and wife maintained a relationship with Quyen and the child, and the child visited the husband and wife in New Hampshire often. The husband and wife attended the child's wedding in 2008.

The husband filed his petition to annul on May 21, 2019, claiming that, at the time of the parties' marriage, the wife was married to two other men, one of whom had since died, and neither of whom the husband identified. The wife filed an answer and cross-petition for divorce, disputing the husband's allegation that she was married at the time of the marriage, and putting the husband to his proof. The trial court issued a notice of hearing "on Petition to Annul Marriage."

The hearing went forward on November 14 on offers of proof; neither party objected to proceeding on offers of proof. Over the wife's objection, the husband submitted several exhibits, including a number of personal letters in Vietnamese between the wife and Quyen or others in Vietnam from the 1980s. In several letters written by Quyen in 1982, he solicited the wife's assistance to "sponsor" him and the child so that they might emigrate to the United States. In those letters, Quyen repeatedly told the wife what his birthday was and where he was born in Vietnam, and where and when the child was born, because she would need that information to sponsor them. In one letter, he requested the wife to write him her date of birth and place of birth as well. None of the letters submitted by the husband expressly referenced a marriage relationship between the wife and anyone else.

The exhibits submitted by the husband also included a 1982 sponsorship form and an "affidavit of relationship" signed by the wife, identifying Quyen and the child as the wife's husband and son, respectively, and containing the date and place of birth information that Quyen had conveyed in his letters. The exhibits additionally included a 2008 wedding announcement card for the child that listed the names of Quyen and the wife with the titles, "Mr. & Mrs." Finally, the documents included an unsworn statement of a third party from Methuen, Massachusetts, claiming to be a friend and former neighbor of the wife from Vietnam, and that the wife had once told the witness that she "had a marriage certificate with [another Vietnamese man that she had] never signed."

2

The wife disputed that she had ever been married to anyone other than the husband. With respect to Quyen and the child, the wife represented that Quyen had been placed in a "North Vietnamese education camp" following the Vietnam war, that he was "desperate to get [the child] and himself out of Vietnam," and that she had done "her best to sponsor him and get him to this country." Although she admitted that she had signed the 1982 sponsorship form and affidavit of relationship, she asserted that she had not prepared those documents, but had simply obtained help from someone else in preparing the documents in order to assist Quyen and the child to get into the United States. The husband agreed that the form and affidavit had been prepared by someone else. With respect to the wedding announcement card, the wife represented that it used the titles "Mr. & Mrs." before her name and Quyen's name as a matter of Vietnamese culture because they were both the parents of the groom.

The wife also submitted, over the husband's objection, a sworn affidavit from Quyen stating that (1) although he had dated the wife beginning in 1974 and had had a child with her in Vietnam in 1975, they had never married; (2) he was detained in a Vietnamese "communist concentration camp" for six years beginning in 1975; (3) while he was in the concentration camp, the wife lived with his family for a short time before leaving the child in their care, and he had lost touch with her; (4) he immigrated to the United States with the son in 1983; (5) he met with the wife and the husband in 1984; (6) he married in 1985; and (7) since immigrating to the United States, the wife and husband had remained close with his family, and as recently as 2016, they had attended a wedding of his niece. Finally, with respect to the other Vietnamese man identified in the unsworn statement submitted by the husband, the wife represented that the man was simply a friend from Vietnam, that she had never had a romantic relationship with him, and that he was now deceased.

The trial court issued an order stating that it had reviewed the exhibits submitted by the husband, the affidavit of Quyen submitted by the wife, and the parties' offers of proof. The trial court found, based upon the evidence, that the wife "is married to the [husband] and was not married to anyone else at the time of the marriage or any time after." Although the trial court found that the husband's exhibits established "a relationship, [there was] no indication of any marriage." Accordingly, the trial court dismissed the petition to annul, and stated that the case would proceed on the wife's cross-petition for divorce.

The husband moved for reconsideration. He argued that "the totality of the weight of the credible evidence substantiates that the [wife] was married to both individuals as alleged." He observed that, in Quyen's affidavit, Quyen had asserted that he had not known the wife's whereabouts when he had returned from the concentration camp in 1982, and he suggested that this was inconsistent with the correspondence he had submitted. The husband further emphasized that the affidavit of relationship not only identified Quyen as the wife's husband, but identified a date and place of marriage ceremony. With the

3

motion, the husband submitted an affidavit asserting that: (1) the wife had admitted to him in July 2019 that she had been married to Quyen, and that she had divorced Quyen in 1978; (2) following the hearing, he had "uncovered" a "divorce document" in Vietnamese, which he was submitting along with a translation of it that he had himself prepared; (3) the divorce document established that the wife had divorced Quyen on December 26, 1978; and (4) he had first learned in 1992 that the wife had been married to the Vietnamese man who was now deceased, and had learned in the 2012 to 2016 timeframe that she had been married to Quyen. The husband requested that the trial court either reconsider its decision or hold a new hearing.

The wife objected to the motion, and to the affidavit and documents submitted with it. She argued that the husband had had ample time to obtain evidence and prepare for the hearing, and that the purported divorce document had not been properly authenticated or translated. The trial court denied the motion, and this appeal followed.

On appeal, the husband first argues that he had established, as a matter of law, sufficient "doubt" as to the validity of the marriage for purposes of RSA 458:2 such that the trial court necessarily erred by dismissing his petition and ruling that the case would proceed on the cross-petition for divorce. He claims that "there is not sufficient amplification as to the court's conclusory orders and/or the weight the Court gave, for instance, to the significant sworn Affidavit of Relationship," and that the trial court "improperly considered [the wife's] proffered Affidavit, and did not provide adequate detail as to an objective basis for the court's determination."

Even if we assume, without deciding, that these arguments are preserved, the hearing was specifically noticed as a hearing on the petition to annul. It was the husband's burden, therefore, to prove at the hearing that the wife in fact was lawfully married to someone else at the time of their marriage. The documents submitted by the husband corroborate the wife's offer of proof that Quyen was desperate to get himself and the parties' child out of Vietnam and into the United States, and that she did what she could to assist him. Indeed, we note that Quyen went so far as to tell the wife, repeatedly, his date and place of birth, as well as the year and place of birth of the parties' child, and to ask her to provide him with her date and place of birth. In assessing the weight of the affidavit of relationship and sponsorship form, the trial court reasonably could have inferred that someone who was truly married to another would likely not have had to reveal such personal information to, or solicit it from, the person's spouse. Moreover, the husband admitted that the wife had not prepared the "affidavit of relationship" or sponsorship form.

The husband submitted no evidence establishing the existence of a marriage between the wife and the deceased man other than an unsworn statement of a witness who was not present in the courtroom claiming that the

4

wife had told her at some unspecified time in the past that she possessed an unsigned marriage certificate with the deceased man. The husband did not submit any marriage certificate or other official documentation establishing the existence of a marriage relationship between the wife and anyone else.

In contrast to the documents submitted by the husband, the wife submitted sworn testimony from Quyen corroborating her testimony that they had never married, but had briefly shared an intimate relationship during the Vietnam War, and establishing that Quyen and his family had maintained a longstanding relationship with both the wife and the husband. Moreover, despite allegedly learning in 1992 that the wife was really married to someone else, the husband continued to treat his marriage to the wife as lawful, including by filing joint federal income tax returns, for another 27 years. Under the circumstances, we conclude that the trial court acted well within its discretion in placing little-to-no weight upon the 1982 "affidavit of relationship" or on the husband's claims, and in determining that the husband had not carried his burden of proof. See Aube, 158 N.H. at 465-66.

The husband next argues that the trial court unsustainably exercised its discretion by denying his motion for reconsideration, and by not considering the new evidence he submitted with it or holding a new hearing. As noted above, the husband was on notice that he would need to prove his petition to annul at the hearing. The husband made no argument in his motion why he could not have discovered the new evidence prior to the hearing. See Spenard, 167 N.H. at 5 (stating that a party seeking to reopen a case in order to submit new evidence must establish that the party was not at fault in failing to discover the evidence prior to the earlier trial). Moreover, even if the trial court had reopened the record, had considered the new evidence, and had credited it, it would have established that the wife had divorced Quyen some nine years before the parties married. The husband offered no other "new" evidence of a marriage between the wife and the deceased Vietnamese man other than his assertion that he had learned of the alleged marriage some twenty-seven years before claiming that their marriage was void on that basis. Upon this record, we cannot conclude that the trial court unsustainably exercised its discretion by denying the motion for reconsideration, and by not reopening the record. Geraghty, 169 N.H. at 419; Spenard, 167 N.H. at 3.

Affirmed.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

Timothy A. Gudas,
Clerk

5