# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0571, <u>In the Matter of Keith Colado and Meagan Colado</u>, the court on November 29, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See Sup. Ct. R.</u> 20(2). The petitioner, Keith Colado, appeals a bifurcated final decree entered by the Circuit Court (<u>Foley</u>, R., approved by <u>Hall</u>, J.), dividing the marital property in his divorce from the respondent, Meagan Colado. <u>See</u> RSA 458:16-a (Supp. 2022). The petitioner argues that, in dividing the marital property, the trial court erred by: (1) considering a period of approximately three years, prior to the marriage, during which the parties cohabited; (2) not crediting him for the amount of his down payment on a home that he brought into the marriage (marital home), and for a separate amount by which he asserts that he reduced the mortgage on the marital home prior to the marriage; and (3) not further reducing the respondent's share of the proceeds from the sale of the marital home by amounts that the petitioner contends the respondent diminished the marital home's value. The petitioner additionally argues that the trial court erred by not finding the respondent in contempt, and not awarding him attorney's fees, for the respondent's alleged failures to notify him of certain pleadings and exhibits she had filed. We affirm.

We first address the petitioner's arguments concerning the division of the marital property. The trial court has broad discretion in fashioning a final decree of divorce. <u>In the Matter of Spenard & Spenard</u>, 167 N.H. 1, 3 (2014). The trial court's discretion includes decisions concerning property distribution. <u>Id</u>. We will not overturn the trial court's rulings on such matters absent an unsustainable exercise of discretion, and we review the record only to determine whether it contains an objective basis to sustain the trial court's discretionary judgments. <u>Id</u>. If the trial court could reasonably have reached its findings on the evidence before it, they will stand. <u>Id</u>. We defer to the trial court's judgment in resolving conflicts in testimony, evaluating the credibility of the witnesses, and determining the weight of the evidence presented, mindful that the trial court may accept or reject, in whole or in part, the testimony of any witness, and is not required to believe even uncontested testimony. <u>In the Matter of Aube & Aube</u>, 158 N.H. 459, 465-66 (2009).

RSA 458:16-a, II requires the trial court to divide marital property in a manner that is equitable. <u>See</u> <u>In the Matter of Sarvela & Sarvela</u>, 154 N.H. 426, 431 (2006). Marital property subject to equitable division includes "all

tangible and intangible property and assets, real or personal, belonging to either or both parties" at the time of the final decree, regardless of "whether title to the property is held in the name of either or both parties," or whether the property was acquired during the marriage or brought into it. RSA 458:16-a, I; see In the Matter of Cohen & Richards, 172 N.H. 78, 83 (2019); Sarvela, 154 N.H. at 431.

The trial court is required to presume that an equal division of marital property is equitable unless it determines, after considering one or more statutory factors, that an equal division would not be equitable or appropriate. RSA 458:16-a, II; Sarvela, 154 N.H. at 431. The trial court need not consider all of the enumerated factors or give them equal weight, and is not required to divide the property by some mechanical formula, but in a manner it deems just based upon the evidence presented and the equities of the case. Sarvela, 154 N.H. at 431. The factors that the trial court may consider include the "duration of the marriage," the "value of any property acquired prior to the marriage," the "value of any property acquired by gift, devise, or descent," and "[a]ny other factor that the court deems relevant." RSA 458:16-a, II(a), (m), (n), and (o). Although premarital cohabitation is not within the "duration of the marriage," 458:16-a, II(a), we have held that the trial court may properly consider it as a "factor that the court deems relevant" for purposes of RSA 458:16-a, II(o). In the Matter of Munson & Beal, 169 N.H. 274, 281 (2016).

In this case, the trial court found, and evidence in the record supports, that the parties began cohabiting around March 2008. The petitioner had purchased the marital home with his father in 2007 because he lacked sufficient credit to acquire the property on his own, and had contributed the $97,031 down payment from his own funds. The petitioner and his father refinanced the marital home in 2009, reducing the original mortgage balance of $118,787 to $83,964. The parties married on August 27, 2011, and resided in the marital home throughout the marriage. The petitioner was incarcerated in Massachusetts from 2016 to 2017, and in New Hampshire State Prison from 2018 through March 2021. The petitioner filed for divorce in May 2020. In August 2020, while the petitioner was still incarcerated, and while the divorce was pending, he sold the marital home, receiving $187,202 in net proceeds.

In addition to the marital home, the petitioner was the sole beneficiary of a trust established by his father, containing certain investments that, at the time of his father's death in February 2021, were worth nearly $400,000. Upon his father's death, the trust terminated, and the property held by the trust transferred to the petitioner. Following the death of his father, the petitioner also inherited, through his father's estate, his father's home, which was not encumbered by a mortgage. The petitioner testified that he thought that property had a value of approximately $250,000 to $300,000.

The trial court held a final hearing on July 18, 2022, and issued its decree on August 3, 2022. At trial, the respondent disclaimed any interest in either the trust property or the real property that the petitioner had inherited from his father. Instead, she sought only half of the sale proceeds from the marital home, testifying that she "put money into the house," that she "did live there for 13 years," that she "physically did work on that house," that she "financially did work on that house," that she "did all of the landscaping," and that "it was a lot of work, a lot of money, and it was nice. It was absolutely beautiful. And I put a lot of time into it." The petitioner countered that the respondent should not receive anything from the marital estate, claiming that she diminished the value of the marital home such that it sold for far less than it could have, and that, while he was incarcerated, she stole or damaged personal property from him and his father, and set up fraudulent accounts in his name. The respondent disputed that she had done anything to diminish the value of the property, or that she had stolen or damaged anything from the petitioner or his father.

The trial court ultimately awarded the respondent half of the $187,202 sale proceeds for the marital home, less $4,420 that the court found the respondent had wrongfully kept after the Social Security Administration had incorrectly paid such funds to the petitioner while he was incarcerated. The trial court awarded the petitioner the remainder of the sale proceeds, as well as all of the trust funds and real property received from his father following his father's death. In so ruling, the trial court found that "the length of the marriage and its premarital equivalent . . . was approximately 12 years." The trial court additionally noted that it could not find, based on the evidence before it, that the respondent was responsible for any diminution in the home's value or that she stole or damaged property of the petitioner or his father. The court concluded that "fairness and equity" entitled the respondent to share the net proceeds from the sale of the marital home, with the $4,420 adjustment.

On appeal, the petitioner first argues that the trial court erred by taking into account the three-year period of time during which the parties cohabited prior to their marriage. We note that, even without the period of cohabitation, the length of the parties' marriage — which began on August 27, 2011 and ended by final decree dated August 3, 2022 — could be deemed "long term." See Sarvela, 154 N.H. at 431 (observing that a "marriage of only one or two years may be considered differently than a long-term marriage of ten . . . years" (quotation omitted)). Nevertheless, as noted above, we have explicitly held that a trial court may consider a period of premarital cohabitation in dividing marital property under RSA 458:16-a, II. Munson & Beal, 169 N.H. at 281. Here, the respondent expressly testified that she had lived in the marital home for many years, including the three years that the parties cohabited, and that she had invested her time, labor, and money into the home. Under these

3

circumstances, the trial court did not unsustainably exercise its discretion by considering the parties' premarital cohabitation.

The petitioner next argues that the trial court erred by not crediting him with the $97,031 down payment that he made on the marital home in 2007, or the amount by which he reduced the mortgage when he refinanced the property in 2009. As noted above, however, the respondent expressly testified that she had lived in the marital home for many years, and that she had invested her own time, labor, and money into the home. We note that several of the years that the respondent testified that she had cared for the home included time that the petitioner was incarcerated and, thus, unavailable to take care of it. We note further that the respondent disclaimed any interest in the marital property that the petitioner had acquired upon the passing of his father, which was worth, according to the petitioner, between $650,000 and $700,000. On this record, we cannot conclude that the trial court unsustainably exercised its discretion by not awarding the petitioner a $97,031 credit for his down payment on the marital home or a credit for the amount in mortgage indebtedness that he saved by refinancing.

The petitioner next argues that the trial court erred by not reducing the respondent's share in proceeds from the sale of the marital home by amounts that he contends the respondent diminished the marital home's value. There was, however, conflicting testimony on these points. Moreover, even if the testimony on these points was uncontested, the trial court was not required to credit it. See Aube, 158 N.H. at 465-66. On this record, we cannot conclude that the trial court unsustainably exercised its discretion by not reducing the respondent's share of the proceeds from the sale of the marital home by amounts that the petitioner claims the respondent diminished the marital home's value.

Finally, the petitioner argues that the trial court erred by not granting certain motions for contempt that he had filed. The trial court's contempt power is discretionary. In the Matter of Ndyaija & Ndyaija, 173 N.H. 127, 138 (2020). The proper inquiry is not whether we would have found the respondent in contempt, but whether the trial court unsustainably exercised its discretion by not doing so. Id.

In this case, the petitioner filed two contempt motions, one on April 27, 2022, and one on May 2, 2022, asserting, inter alia, that the respondent had filed certain pleadings, exhibits, and a financial affidavit without serving copies upon him, that she had not picked up a copy of the divorce petition at the courthouse or otherwise made herself available for service of process, and that she had filed her own divorce petition in a different circuit court location. The trial court deferred ruling on the motions until the July 18, 2022 final hearing.

4

At the start of the July 18, 2022 final hearing, counsel for the petitioner asked the trial court whether it preferred to address the contempt issue "first or after." The trial court responded that it would prefer to address the contempt issue "along the way." At no point thereafter during the hearing, however, did the petitioner offer evidence or argument relative to the contempt issues. In the absence of evidence to support the motions, we cannot conclude that the trial court unsustainably exercised its discretion by not granting the motions and requests for attorney's fees.

Affirmed.

MacDonald, C.J., and Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**