# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2022-0705, <u>In the Matter of Susan Swartz and Robert Swartz</u>, the court on March 18, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See Sup. Ct. R.</u> 20(2). The respondent, Robert Swartz, appeals a final decree entered by the Circuit Court (<u>Lown</u>, J.), following a three-day final hearing, in his divorce from the petitioner, Susan Swartz. On appeal, the respondent challenges the sufficiency of the evidence to support the trial court's findings that he engaged in adultery and treated the petitioner in a manner that seriously injured her health or endangered her reason for purposes of RSA 458:7 (Supp. 2023), that the petitioner was "the innocent party" under the statute, and that his conduct caused the breakdown of the marriage. The respondent additionally raises numerous arguments challenging the trial court's decisions ordering him to pay the petitioner 57% of the petitioner's reasonable attorney's fees, 57% of the debts she incurred, and alimony for a term of fifteen years. Finally, the respondent challenges the trial court's decisions not to credit him with certain student loan debt incurred by the parties' adult children for which he co-signed or to order the petitioner to share such debt, and to require that he obtain life insurance benefitting the petitioner. We affirm.

The trial court has broad discretion in fashioning a final divorce decree. <u>In the Matter of Spenard & Spenard</u>, 167 N.H. 1, 3 (2014). Its discretion includes decisions concerning alimony and property distribution. <u>Id</u>. Its discretion likewise includes whether to award attorney's fees when the court finds need on the part of one party and the ability to pay on the part of the other party. <u>In the Matter of Hampers & Hampers</u>, 154 N.H. 275, 289-90 (2006). We will not overturn the trial court's rulings on such matters absent an unsustainable exercise of discretion, reviewing the record only to determine whether it contains an objective basis to sustain its discretionary judgments. <u>Spenard</u>, 167 N.H. at 3. We assume that the trial court made all findings of fact necessary to support its general rulings. <u>See In the Matter of Dube & Dube</u>, 163 N.H. 575, 579 (2012); <u>Hampers</u>, 154 N.H. at 290.

If the trial court could reasonably have reached its findings, including its implied findings, on the evidence before it, they will stand. <u>Spenard</u>, 167 N.H. at 3; <u>Dube</u>, 163 N.H. at 579; <u>Hampers</u>, 154 N.H. at 290. We defer to the trial court's judgment in resolving conflicts in testimony, evaluating the credibility of

witnesses, and determining the weight of the evidence, mindful that the trial court may accept or reject, in whole or in part, the testimony of any witness, and is not required to believe even uncontested testimony. In the Matter of Aube & Aube, 158 N.H. 459, 465-66 (2009). This standard of review applies both to direct and circumstantial evidence. Cf. Renovest Co. v. Hodges Development Corp., 135 N.H. 72, 77 (1991) ("The trial court . . . was not bound to view [the evidence] in a light most favorable to the plaintiff, with all attendant favorable presumptions, but was bound to take an unbiased view of all the evidence, direct and circumstantial, and accord it such weight as he believed it entitled to receive." (Quotation and brackets omitted.)).

We first address the respondent's arguments that the trial court erred by finding that he engaged in adultery and conduct that seriously injured the petitioner's health or endangered her reason, that his conduct caused the breakdown of the marriage, and that the petitioner was the "innocent party." RSA 458:7 authorizes the granting of divorce in favor of "the innocent party" on various fault grounds, including "[a]dultery of either party" and treatment by one party of the other party so "as seriously to injure health or endanger reason." RSA 458:7, II, V. "Adultery" means "voluntary sexual intercourse between a married person and someone other than that person's spouse." In the Matter of Blaisdell & Blaisdell, 174 N.H. 187, 194 (2021). Treatment of the complaining spouse "as seriously to injure health or endanger reason" is conduct that in fact seriously injures the complaining spouse's health or endangers his or her reason, regardless of whether it would have affected an average or reasonable person similarly, whether the conduct was directed toward the complaining spouse, or whether the guilty spouse acted with malevolent intent. In the Matter of Henry & Henry, 163 N.H. 175, 178, 180-81 (2012). An "innocent party" under RSA 458:7 is a spouse who is not guilty of an offense against the other spouse that would constitute a fault-based ground for divorce under RSA 458:7. See In the Matter of Ross & Ross, 169 N.H. 299, 302 (2016). Whether a party to a divorce has engaged in conduct constituting fault under RSA 458:7, and whether such conduct caused the breakdown of the marriage, are questions of fact. See Dube, 163 N.H. at 579; Henry, 163 N.H. at 178; Hampers, 154 N.H. at 279.

In finding that the respondent committed adultery, the trial court relied upon evidence in the record establishing, among other things, that (1) when the petitioner discovered a relationship between the respondent and co-respondent, the respondent was untruthful regarding who the co-respondent was, and he concealed her identity in his cell phone contacts; (2) when the petitioner confronted the respondent about the relationship, he admitted that he had "cheated" on her; (3) in numerous emails to the petitioner prior to the divorce, the respondent apologized for his relationship with the co-respondent; (4) although the respondent and petitioner had not been sexually intimate for years, the respondent began purchasing Viagra prior to the divorce; (5) in one text exchange between the co-respondent and respondent, the co-respondent

2

said, "goodnight, handsome," that she had his underwear, that his underwear "smelled so good and just like him," and that she could not wait to see him again; (6) the respondent moved into an apartment, to which the co-respondent had access, across the street from where the co-respondent lived; (7) the respondent and co-respondent were seen together in public on multiple occasions, and on one occasion, they were photographed walking arm-in-arm; (8) the respondent and co-respondent took at least two trips together, sharing a hotel room on one of the trips; and (9) the same month that the petitioner discovered the relationship, the co-respondent's husband filed for divorce believing that the co-respondent and respondent were having an affair. Based on this evidence, the trial court found the denials of both the respondent and co-respondent of a sexual relationship not credible.

With respect to whether the respondent treated the petitioner as seriously to injure her health or endanger her reason, and whether his conduct caused the breakdown of the marriage, the trial court relied upon evidence establishing that, following the petitioner's discovery of the respondent's infidelity, she was severely depressed, twice attempted suicide, and required multiple hospitalizations and mental health treatment over the course of years. According to the trial court, the petitioner "testified credibly" that she "had never had any mental health problems, diagnoses or treatment at any time prior to" her discovery of the respondent's extra-marital relationship, and that "the discovery of the relationship between the respondent . . . and [the co-respondent] was the proximate cause of her distress and suffering." The trial court additionally noted the petitioner's testimony that, prior to discovering the respondent's infidelity, they had had a "good" life together, and that her discovery of the infidelity devastated her.

Finally, with respect to the respondent's claim that the petitioner was not an "innocent party" because she had herself engaged in "extreme cruelty" for purposes of RSA 458:7, III when she "seriously injured him by pushing him down the stairs," the trial court observed that the respondent submitted no evidence substantiating his claimed injuries. We note that the petitioner disputed the respondent's claim that she hit him or pushed him down the stairs during the incident. After considering the testimony of the respondent and the parties' daughter concerning the incident, the trial court concluded that the respondent had not met his burden to prove that the petitioner had forcibly pushed him down the stairs. See In the Matter of Guy & Guy, 158 N.H. 411, 412 (2009) (extreme cruelty generally requires proof of actual or threatened bodily injury).

Based upon our review of the record, we find ample support for the trial court's findings that the respondent engaged in adultery and conduct that seriously injured the petitioner's health or endangered her reason, that such conduct caused the breakdown of the marriage, and that the petitioner was the "innocent party" under RSA 458:7. Although the respondent emphasizes

3

conflicting evidence and offers different interpretations of the evidence, the trial court was well within its discretion to assess the weight of the evidence and credibility of the witnesses, to resolve the conflicts in the evidence, and to draw the conclusions that it did on these issues. See Aube, 158 N.H. at 465-66.

We next address whether the trial court erred by ordering the respondent to pay 57% of the petitioner's reasonable attorney's fees. We note that, on reconsideration, the trial court clarified that it was ordering the payment of attorney's fees on the basis of need on the part of the petitioner and the ability to pay attorney's fees on the part of the respondent, and we assume that the trial court made the requisite findings of need and ability to pay. Hampers, 154 N.H. at 289-90. Evidence in the record supports these implied findings. Moreover, we note that the petitioner introduced exhibits regarding the attorney's fees she has incurred, which the respondent has not provided on appeal. We assume, therefore, that these exhibits likewise support the trial court's award of reasonable attorney's fees. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004) (assuming that relevant portions of the record not provided on appeal support the result reached by the trial court).

The respondent argues that the trial court erred by awarding the petitioner 57% of the reasonable attorney's fees she incurred because it had awarded her temporary alimony and certain marital assets, and because, he claims, the petitioner did not accurately report her assets on her financial affidavit. He further argues that the trial court erred by not considering that the petitioner had allegedly incurred fees unnecessarily, and by not placing a "cap" on the fees awarded. Based upon our review of the record in this case, we cannot conclude that the trial court unsustainably exercised its discretion by awarding the petitioner 57% of the reasonable attorney's fees she incurred. Hampers, 154 N.H. at 290.

To the extent the respondent argues that the trial court violated the procedural requirements of Gosselin v. Gosselin, 136 N.H. 350, 353 (1992), by not making a determination as to the reasonableness of the fees the petitioner incurred, we note that (1) the trial court, in its final decree, expressly awarded the petitioner 57% of the reasonable attorney's fees she incurred, and (2) the respondent, in his motion for reconsideration, did not argue that the trial court violated Gosselin with respect to a reasonableness determination. Any argument that the award violated Gosselin is not preserved. See Hampers, 154 N.H. at 287; Fam. Div. R. 1.26(F) (to preserve argument regarding issue addressed in final order not previously raised in the case, appealing party must raise issue in motion for reconsideration).

We next address whether the trial court erred by ordering the respondent to pay 57% of the debts the petitioner incurred. The respondent argues that the trial court erred because the petitioner incurred unnecessary or unauthorized debts after the commencement of the divorce. He further

suggests that, because the petitioner incurred credit card debt to pay attorney's fees, the trial court "penalized" him by requiring him to pay such debts twice.

RSA 458:16-a, II (Supp. 2023) requires the trial court to divide marital property, including marital debt, see Maldini v. Maldini, 168 N.H. 191, 195 (2015) (stating that "marital property" includes "marital debt" for purposes of property division), in a manner that is equitable, see In the Matter of Sarvela & Sarvela, 154 N.H. 426, 431 (2006). The trial court is required to presume that an equal division of marital property is equitable unless it determines, after considering one or more statutory factors, that an equal division would not be equitable or appropriate. RSA 458:16-a, II; Sarvela, 154 N.H. at 430-31. Such factors include the "duration of the marriage," the "age, health, social or economic status, occupation, vocational skills, employability, separate property, amount and sources of income, needs and liabilities of each party," the "opportunity of each party for future acquisition of capital assets and income," and the "fault of either party as specified in RSA 458:7 if said fault caused the breakdown of the marriage." RSA 457:16-a, II(a), (b), (c), & (l). The trial court is not required to divide the property by some mechanical formula, but in a manner it deems just based upon the evidence presented and the equities of the case. Sarvela, 154 N.H. at 431.

Based upon our review of the record in this case, we cannot conclude that the trial court unsustainably exercised its discretion by ordering the respondent to pay 57% of the debts that the petitioner incurred. Spenard, 167 N.H. at 3. To the extent the respondent claims that the trial court ordered him to pay the same debts twice with respect to any credit card debt that the petitioner incurred to pay her legal fees, we note that on reconsideration, the trial court specifically clarified that the respondent's reimbursement of 57% of the petitioner's attorney's fees would *reduce* his obligation to pay any credit card debt that the petitioner incurred to pay such fees.

With respect to the respondent's further argument that the trial court erred by not crediting him with certain student loan debt incurred by the parties' adult children for which he co-signed or requiring the petitioner to share such debt, we note that the petitioner asserts, and the respondent has not contested, that there was no evidence either that the petitioner had co-signed such loans, or that such loans were in default. Upon this record, we cannot conclude that the trial court unsustainably exercised its discretion by not crediting the respondent with the student loan debt incurred by the parties' adult children, or by not ordering the petitioner to share such debt. See id.

We next address the respondent's arguments regarding alimony. The respondent first contends that the trial court erred because it allegedly did not analyze the petitioner's expenses. To the contrary, the trial court expressly noted on reconsideration that it "did examine the reasonable expenses of the petitioner . . ., and in fact reduced them for the purpose of computing alimony."

5

Indeed, in its final decree, after noting the respondent's challenges to some of the petitioner's claimed expenses for purposes of alimony calculation, the trial court reduced her monthly expenses by more than $2,000. The respondent offers no legal support for his contention that the trial court was required to offer more "in-depth analysis" of the petitioner's claimed monthly expenses in its final decree.

The respondent also argues that the trial court erred by utilizing an incorrect formula for calculating presumptive alimony under RSA 458:19-a, II(a) (Supp. 2023). On reconsideration, the trial court acknowledged its error, but observed that the error was not prejudicial because it ultimately calculated the respondent's alimony obligation based upon the petitioner's actual reasonable need, an amount less than the alimony amount calculated pursuant to the formula of RSA 458:19-a, II(a) if the formula had been applied in this case. Accordingly, the error was harmless. See Hardy v. Chester Arms, LLC, 176 N.H. ___, ___ (Jan. 30, 2024) (slip op. at 12) (stating that a harmless error is an error that does not affect the outcome).

The respondent further challenges the fifteen-year term of the alimony award on the basis that it will be effective beyond his retirement age under the federal Social Security program. He contends that "[t]here is no authority in the law for such an order," that RSA 458:19-a did not require that the trial court order alimony for half the duration of the marriage, and that the trial court erred by making "no findings on the term whatsoever." RSA 458:19-a, III provides that "[t]he maximum duration of term alimony shall be 50 percent of the length of the marriage, unless the parties agree otherwise or the court finds that justice requires an adjustment under" RSA 458:19-a, IV. Here, the fifteen-year term of the alimony obligation was less than half the length of the marriage. Moreover, the respondent cites no legal authority that would prohibit an alimony term lasting beyond the obligor's social security retirement age, or require specific findings of fact justifying the term of an alimony award that is less than half the length of the parties marriage under RSA 458:19-a, III. Nor are we aware of any such legal authority.

The respondent additionally challenges the trial court's decision to award alimony retroactive to the filing of the divorce petition. The respondent contends that "[t]here is no authority in the law for such an order," and that the trial court instead should have ordered alimony retroactive to the date of the first temporary alimony order issued in the case. The respondent cites no legal authority prohibiting an award of alimony retroactive to the filing of the divorce petition. To the contrary, we have observed that "[a]lthough there is no express authority permitting a New Hampshire court to order retroactive alimony, neither is there express authority prohibiting such an order," and that "in a proper case, courts may make alimony awards retroactive computed at any time subsequent to the commencement of the suit for divorce." Walker v. Walker, 133 N.H. 413, 418 (1990). On this record, we cannot conclude that

6

the trial court unsustainably exercised its discretion by ordering alimony retroactive to the filing of the petition.

Finally, the respondent argues that the trial court erred by requiring that he obtain life insurance benefitting the petitioner. He contends that the trial court erred in so ruling because it did not find that he "could obtain such a life insurance policy, given his age and health."

The record reflects that, following the commencement of divorce proceedings, the respondent removed the petitioner as a beneficiary of his life insurance policies. At the final hearing, the petitioner requested that the respondent be ordered to provide life insurance benefitting her "for at least 1.5 million dollars." The respondent countered that life insurance "should be given to what [the trial court] order[s] for alimony," and that, while the respondent disagreed that the trial court should award $1.5 million, "whatever [the] alimony award is, life insurance should be tied in with that." We note that the trial court awarded alimony in the amount of $15,449 per month for a term of fifteen years, which will amount to a total of more than $2.75 million. In its final decree, the trial court gave the respondent the option of either re-designating the petitioner as the beneficiary of his existing life insurance policies, or obtaining a new term life insurance policy with a face amount of $2,000,000, allowing the respondent to reduce the face amount of the policy "[a]s the remaining alimony obligation declines over time." Upon this record, we cannot conclude that the trial court unsustainably exercised its discretion in its orders regarding life insurance. See Spenard, 167 N.H. at 3.

Affirmed.

MacDonald, C.J., and Bassett, Hantz Marconi, Donovan, and Countway, JJ., concurred.

**Timothy A. Gudas,
Clerk**

7