# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0251, <u>In the Matter of Robert Pizani, Jr. and Dayana Pizani</u>, the court on February 21, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The respondent, Dayana Pizani (Wife), appeals a final divorce decree and alimony order entered by the Circuit Court (<u>Lemire</u>, J.) dividing the marital property and awarding her alimony in her divorce from the petitioner, Robert Pizani, Jr. (Husband). <u>See</u> RSA 458:16-a (2018 & Supp. 2023); RSA 458:19-a (2018 & Supp. 2023). Wife argues that the trial court erred by: (1) improperly allowing Husband to offset his alimony obligation against the property division award; (2) allowing Husband's appraisal reports to be admitted at trial under New Hampshire Rule of Evidence 804(b)(6); (3) choosing a value for certain property in Panama that was the average of the appraisals offered by the parties when there was no evidence to support the value; (4) ignoring the children's interest in the Panama property and assigning one hundred percent of the property's value to Wife; and (5) finding that Wife intentionally dissipated or diminished the marital estate when she transferred her ownership in the Panama property to a business entity. We affirm.

## I.     Background

The following facts were found by the trial court or are supported by the record. The parties were married in 1995 and have two adult children. Wife is from Panama. The parties purchased a home in Londonderry and lived there for more than seventeen years. In 2006, Wife's mother deeded three parcels of land in Panama to her. In 2015, Wife's father deeded three additional parcels of land in Panama to her.

In January 2019, Husband began an affair. In July 2019, Husband announced he was leaving the marriage and moved out of the marital home. In August 2019, Wife created En Dios Confio, S.A. (EDC), a business entity in Panama. In January 2020, Wife owned a fifty-two percent interest in the company, while the parties' children each owned a twenty-four percent interest. In January 2020, Wife deeded the Panama land held in her name to EDC.

Husband filed for divorce on February 24, 2020, alleging irreconcilable differences. On February 28, Wife transferred her EDC shares equally to her children. On May 28, Wife filed a cross-petition for divorce alleging the fault ground of adultery. In September, the children transferred shares back to Wife such that she regained her prior fifty-two percent interest in the company.

Following a final divorce hearing, the trial court issued a narrative order. The court dismissed Husband's ground for divorce and granted Wife the divorce on the ground of adultery. Citing RSA 458:16-a, II(l) and RSA 458:19-a, IV(g), the court considered Husband's adultery, among other things, in determining the division of marital assets and alimony.

The court awarded alimony to Wife in the amount of $5,000 per month for a period of 148.5 months. In determining the property division, the court identified and valued a variety of marital assets. Relevant to this appeal, the court constructively awarded the full value of the Panama land, $2,428,047, to Wife in the parties' overall property division. The court awarded Wife approximately sixty-five percent of the marital estate and Husband approximately thirty-five percent.

Because the Panama land was the largest asset, and was awarded entirely to Wife, the court found that a cash payment was required to make the division equitable. The court ordered Wife to pay Husband $719,632 at a rate of $5,000 per month. Further, the court ordered that so long as Husband had an alimony obligation to Wife, instead of making the alimony payment, "he shall retain the $5,000 per month and it shall be credited against the property settlement payment she owes him." The court stated that in the event Wife paid the balance of the settlement payment in full, Husband "shall thereafter immediately begin paying her alimony of $5,000 per month until the end of 148.5 months, or [Wife's] remarriage, whichever sooner occurs." This appeal followed.

## II.    Analysis

A trial court has broad discretion in fashioning a final decree of divorce, and in managing the proceedings before it. In the Matter of Spenard & Spenard, 167 N.H. 1, 3 (2014). Its discretion necessarily encompasses decisions concerning child support, alimony, and property distribution. Id. We will not overturn a trial court's rulings absent an unsustainable exercise of discretion. Id. This standard of review requires that we review the record only to determine whether it contains an objective basis to sustain the trial court's discretionary judgments. Id. If the court's findings can reasonably be made on the evidence presented, they will stand. Id.

We first address Wife's argument that the trial court erred in allowing Husband's appraisal reports to be admitted at trial under New Hampshire Rule

of Evidence 804(b)(6).[1]  In February 2021, Husband's appraisal company issued appraisal reports regarding the Panama land.  In May, Husband provided copies of the appraisals to Wife.  On June 10, Wife moved to strike the appraisals.  On June 14, the trial court denied the motion.  On June 18, Wife granted power of attorney to her cousin, a Panamanian attorney.  On August 9, the attorney filed a criminal complaint and civil action on Wife's behalf against the appraisal company alleging that the company completed the appraisals without authorization or permission and established "false values . . . with the sole purpose of benefitting [Husband] in the . . . divorce proceedings."  The civil action alleged economic damages equivalent to $1,000,000.

On December 17, Husband's appraisal company informed him that, in light of the lawsuit, it would not act as an expert witness in his divorce hearing.  On January 10, 2022, Husband moved to admit the appraisal reports without expert testimony, arguing that they were admissible, in part, under Rule 804(b)(6) because Wife "wrongfully and intentionally" caused the appraisal company to be unavailable "by filing a frivolous lawsuit to intimidate" the company from testifying at the divorce hearing.  See N.H. R. Ev. 804(b)(6).  The trial court granted the motion.  In its order, the court observed that "[t]he Rules of Evidence do not apply to divorce proceedings in the Family Division." Nevertheless, the court found that the appraisal reports were admissible under Rule 804(b)(6).

The trial court has broad discretion over the admission of evidence in divorce cases and is not bound by the rules of evidence.  Gosselin v. Gosselin, 136 N.H. 350, 353 (1992); N.H. R. Ev. 1101(d)(3).  We review a trial court's decision on the management of discovery and the admissibility of evidence under an unsustainable exercise of discretion standard.  In the Matter of Hampers & Hampers, 154 N.H. 275, 280 (2006).  To meet this standard, Wife must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of her case.  Id.

Although the trial court conducted an analysis under Rule 804(b)(6) in finding the appraisal reports admissible, we need not review the court's analysis under that rule because we conclude that the court's decision to admit the evidence was a sustainable exercise of discretion.  The court inferred from the timing of the Panamanian lawsuit that it "was intended to accomplish what [Wife] was unable to do in this Court, namely preclude the admission of [Husband's] appraisals."  On this record, we determine that it was reasonable for the trial court to admit Husband's appraisal reports and Wife has failed to

---

[1] New Hampshire Rule of Evidence 804(b)(6) provides that the following is not excluded by the rule against hearsay if the declarant is unavailable as a witness: "A statement offered against a party that wrongfully caused — or acquiesced in wrongfully causing — the declarant's unavailability as a witness, and did so intending that result."

demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of her case.

We next address Wife's argument that the trial court erred when it chose a value for the Panama land that was exactly one half the value between the competing appraisals when there was no evidence to support that value. The trial court found that Husband's appraisals valued the Panama land at a combined $4,027,073 and that Wife's appraisals valued the land at a combined $757,020. The trial court found "that the fair market value of the five lots appraised for this trial likely lies between the figures provided by the two appraisers" and assessed a value of $2,392,047 to the lots in question. This value is the average of the two appraisals rounded to the nearest dollar.

"Fair market value is the price a willing buyer and a willing seller would probably arrive at through fair negotiations, taking into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining." Rattee v. Rattee, 146 N.H. 44, 50 (2001) (quotation omitted). The determination of fair market value is a question of fact. Ventas Realty Ltd. P'ship v. City of Dover, 172 N.H. 752, 755 (2020). "We have never attempted to tie the fact finder's hands with a rigid fair market value formula in the absence of legislative directive. Rather, judgment is the touchstone." Appeal of Pennichuck Water Works, 160 N.H. 18, 38 (2010) (quotations, brackets, citation, and ellipsis omitted).

We will uphold the trial court's findings of fact unless they lack evidentiary support or are legally erroneous. Ventas Realty Ltd. P'ship, 172 N.H. at 755. We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. Id. Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. Id. The trier of fact "is not compelled to accept the opinion evidence of any one witness or group of witnesses, including expert witnesses." Appeal of Pennichuck Water Works, 160 N.H. at 41. The trier of fact can "accept or reject such portions of the evidence as it [finds] proper, including that of expert witnesses," and is "not required to believe even uncontroverted evidence." Id.

In determining the value of the Panama land, the trial court reviewed and considered the parties' appraisals of the property. Husband's appraiser employed a comparative market approach in valuing the property. The appraiser identified various comparable properties that had recent offers and determined a dollar per square meter value for each. The appraiser made adjustments to the values based on a variety of factors including size, accessibility, location, zoning, view, and topography in comparison to the subject property. Based on the adjusted values, the appraiser determined a

4

dollar per square meter value for the subject property and multiplied it by the surface area resulting in a final dollar value of the property. The court observed that Husband's appraiser "did not appear to have discounted substantially enough for the location of the comparable properties that were in 'better' locations" but otherwise found the appraisal method, and the appraisals themselves, "to be more professional, detailed, accurate, and reliable" than Wife's appraisals.

The trial court noted several issues with Wife's appraisals. First, Wife's appraiser's license number was not noted on his reports. The appraiser testified that although he is a member of a Panamanian appraisal organization, he had not yet met the prerequisites to obtain a registration number that would be displayed on his appraisals. Further, Wife's appraisals did not: (1) bear the appraisal organization's stamp; (2) identify a method of appraisal, although the appraiser testified that he utilized the "investigation in the direct place" approach; or (3) explain the basis of the values depicted. The appraiser simply assigned a price per square meter value and multiplied it by the surface area.

In addition, the trial court considered the testimony of the parties, and of Husband's mother, regarding the value of the Panama land. Husband testified that Wife frequently told him that the land was worth "millions" ranging anywhere from $4.5 million to $12 million. Husband's mother recalled a conversation in 2009 during which she heard the land was appraised at $4.5 million. Wife confirmed in her testimony that she told Husband the land was worth millions. The court also considered "the great lengths to which [Wife] went to attempt to remove the land — at whatever its value — from the marital estate and keep it for herself and her family."

We conclude that the trial court's valuation of the Panama land does not lack evidentiary support. As discussed above, the record supports the trial court's valuation largely crediting Husband's appraisals based on their overall quality compared to Wife's appraisals, but significantly discounting the final total value in consideration of the distant location of the comparable properties relied on by the appraiser. A reasonable person could have reached the same decision as the trial court based on the same evidence. See Ventas Realty Ltd. P'ship, 172 N.H. at 755.

Wife further argues that the trial court erred when it found that she had dissipated or diminished the marital estate by transferring her ownership of the Panama land and when it attributed one hundred percent of the value of the Panama land to her in the property division. We disagree.

The trial court found that Wife "transferred her ownership interest in the land to [EDC] in an effort to remove it from the marital estate and to frustrate [Husband's] efforts to either receive any interest therein in the property division

and/or to have the Court assess its full value to her if awarded to her in the divorce." The court observed that "while it is true that only [Wife's] 52% interest in EDC is a marital asset subject to division in this divorce, the Court may and does consider the full value of the property transferred by [Wife] to EDC in determining the equitable division of the marital estate because it finds that her transfers were intended to avoid division of the Panamanian land as part of the marital estate." The trial court found that because "[Wife] transferred the Panamanian land to EDC, and gave 48% of the interest in EDC to the parties' adult [children] who are not subject to the jurisdiction of [the] Court in order to avoid its inclusion in the marital estate, the Court can and does treat the Panamanian land as though it is still part of the marital estate and constructively awards it to [Wife] as part of her share of the estate."

When property is intentionally dissipated to avoid its inclusion in the property to be equitably distributed, such intentional dissipation is a fraud on marital rights. In the Matter of Brownell & Brownell, 163 N.H. 593, 600 (2012). In such a case, courts treat the dissipated assets as if they were existing marital property, and then either constructively award them to the dissipating spouse as part of that spouse's share of the marital estate, or, if insufficient assets remain to compensate the innocent spouse, order the dissipating spouse to pay a monetary award. Id. at 600-01.

We conclude that the trial court did not err in finding that Wife intentionally dissipated the Panama land by transferring it to EDC ahead of the imminent divorce proceedings. We further conclude that, given its dissipation finding, the trial court did not err when it considered the full value of the property in determining the equitable division of the marital estate and when it constructively awarded the property to Wife as part of her share of the estate. In these circumstances, because the court constructively awarded Wife the property for the purposes of determining the equitable division of the marital estate, its order did not have the effect of invalidating the rights of the parties' children who have a forty-eight percent interest in EDC, as argued by Wife. Cf. In the Matter of Routhier & Routhier, 175 N.H. 6, 13 (2022) (determining that "including the value of [the husband's] undivided interest in the Dunbarton property as part of the marital estate does not sever his joint interest from the whole and would not invalidate his parents' ownership interest").

In addition, Wife asserts that the trial court erred by admitting a text message between the parties' daughter and Husband that is the "factual underpinning to the finding that the wife intentionally dissipated the Panamanian property." Wife appears to argue that the text message was inadmissible hearsay. As discussed above, in divorce cases the trial court is not bound by the rules of evidence, see Gosselin, 136 N.H. at 350, and we review the trial court's decision to admit evidence under an unsustainable exercise of discretion standard. See Hampers, 154 N.H. at 280. We conclude that Wife has failed to demonstrate that the trial court's decision to admit the

6

text message was clearly unreasonable or untenable. See id. We disagree with Wife's premise that the text message was the factual underpinning of the trial court's dissipation finding. Instead, the court relied on Wife's actions in transferring the property to EDC ahead of the imminent divorce. The court's dissipation finding is supported by the record even without considering the text message. In these circumstances, the text message amounted to cumulative evidence and its admission did not prejudice Wife's case. On this record, we conclude that Wife has failed to demonstrate that the court unsustainably exercised its discretion to the prejudice of her case by admitting the text message. See In the Matter of Kamil & Kamil, 173 N.H. 424, 437 (2020).

Given our conclusion that the record supports the trial court's ruling that Wife intentionally dissipated the Panama property, we need not consider the court's alternative ruling that the transfer of the property warrants an unequal distribution of the estate under RSA 458:16-a, II(f) and In the Matter of Martel & Martel, 157 N.H. 53 (2008). See Loeffler v. Bernier, 173 N.H. 180, 189 (2020).

Finally, Wife argues that the trial court improperly allowed Husband to offset his alimony obligation against the property division award. Wife asserts that the trial court "merged" its property division and alimony orders "so that [Wife] lost nearly all of her alimony award in order to compensate [Husband] for his share of the marital property." We disagree.

The court's orders generate two independent obligations. First, Husband is obligated to pay $5,000 per month for 148.5 months to Wife in alimony. Second, Wife owes Husband a property settlement payment of $719,632. The court, acknowledging that it was unlikely Wife would be able to make a lump sum payment to Husband thereby satisfying the property settlement obligation, ordered the lump sum payment to be paid at a rate of $5,000 per month until it is paid in full. The court went on to order Husband to retain his alimony payments, crediting those payments against the property settlement, so long as the alimony obligation exists, until the property settlement is paid.

Absent these specific orders, Wife would immediately owe Husband the property settlement amount in full. See In the Matter of Harvey & Harvey, 153 N.H. 425, 436 (2006) (explaining that "a trial court should award a property settlement to be effected immediately where practicable"), overruled on other grounds by In the Matter of Chamberlin & Chamberlin, 155 N.H. 13, 15-16 (2007). If Wife wishes to receive alimony payments from Husband, she may do so by paying her property settlement obligation to Husband. Accordingly, we

conclude that the court sustainably exercised its "broad discretion" in so fashioning the final decree of divorce.  See <u>Spenard</u>, 167 N.H. at 3.

<u>Affirmed</u>.

MACDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred; HICKS, J., sat for oral argument but did not participate in the final vote, <u>see</u> N.H. CONST. pt. II, art. 78.

**Timothy A. Gudas,
Clerk**